324 So.2d 149 (1975)
CABLE-VISION, INC., a Florida Corporation, Appellant,
v.
William A. FREEMAN, Jr., et al., Appellees.
No. 74-1408.
District Court of Appeal of Florida, Third District.
December 9, 1975.
Rehearing Denied January 22, 1976.
*150 Madigan, Parker, Gatlin, Truett & Swedmark, Tallahassee, for appellant.
Horton, Perse & Ginsberg, Paul E. Sawyer, Key West, Robert L. Shevin, Atty. Gen., and Tom Harris, Asst. Atty. Gen., Tallahassee, for appellees.
Before PEARSON, HENDRY and NATHAN, JJ.
NATHAN, Judge.
Appellant, Cable-Vision, Inc., brings before this court for review, a final declaratory judgment arising out of a suit brought in the trial court by the Board of County Commissioners of Monroe County for the purpose of determining the rights of the county to construct and operate television broadcast translator stations.
The facts in this case, and the trial court so found, are not in dispute. The county, on March 9, 1965, granted to Cable-Vision an exclusive 30-year franchise to furnish a cable television system.[1] Apparently, and for good reason, there was some doubt as to the county's authority to grant such a franchise. Consequently, during the 1965 session of the Florida Legislature, Chapter 65-1916 was enacted specifically ratifying the March 9, 1965 franchise.[2] At the same *151 session of the Florida Legislature, Chapter 65-1927 was enacted, the effect of which purports to grant a non-exclusive franchise by the State of Florida to Cable-Vision to operate a cable television system in Monroe County for a period of 30 years.[3] The county, on May 22, 1973, enacted Ordinance No. 5-1973 which authorized the county to construct and operate television broadcast translator stations within the county for the purpose of providing direct television reception to its citizens.[4] The *152 trial court held that the county had the power to construct and operate television broadcast translator stations. It is from this final declaratory judgment that Cable-Vision appeals.
The first issue for our consideration is whether Cable-Vision has an exclusive franchise to furnish all forms of television in Monroe County, stemming, not only from the agreement granting the franchise, but from legislative enactments under Chapters 65-1916 and 65-1927, Laws of Florida. If this be so, then the county's resolution to construct, maintain and operate television broadcast translator stations would be invalid because it would violate the terms of such legislative enactments and, in addition, the ordinance would be an unconstitutional impairment of the obligations of an existing contract. Jarrell v. Orlando Transit Co., 1936, 123 Fla. 776, 167 So. 664.
Cable-Vision contends that it has an exclusive franchise from the county, and thus the county is barred from competing with Cable-Vision as well as from granting any competing franchises. We disagree. The county's agreement of March 9, 1965, purported to grant an exclusive franchise to Cable-Vision. This was, and obviously was so recognized, an ultra vires and invalid ordinance because, as the trial court declared, the power to regulate occupations and businesses by licensed franchises is a peculiar attribute of state sovereignty which requires state legislation. It would appear that this is why the Florida Legislature enacted Chapter 65-1916 which ratified the exclusive franchise agreement and subsequently enacted Chapter 65-1927 granting to Cable-Vision, by the State of Florida, a non-exclusive franchise. Since Chapter 65-1927 was the last expression of the legislature as far as the franchise enjoyed by the appellant is concerned, and since that act only granted a nonexclusive franchise whereas Chapter 65-1916 sought to grant or ratify an exclusive franchise granted by the appellee, the question arises as to which of the laws is paramount and which should be construed as controlling. The trial judge found that there was an inconsistency between Chapter 65-1916, Laws of Florida, 1965, and Chapter 65-1927. He construed the last expression of the legislature, to-wit: Chapter 65-1927, to be controlling and he did it upon the well recognized proposition of law that any such inconsistency should be resolved in favor of the last expression of the legislative will. In 30 Fla.Jur., Statutes § 210, Irreconcilable Provisions, it is stated:
"One important general rule in this regard (the reconciliation of inconsistent provisions) is that the last expression of the legislative will is the law, and that, therefore, the last in point of time or order of arrangement prevails. This rule is applicable where the irreconcilable provisions appear in different statutes, or in different provisions of the same statute."
See also: Johnson v. State, 1946, 157 Fla. 685, 27 So.2d 276; Overstreet v. Ty-Tan, *153 Inc., Fla. 1950, 48 So.2d 158; State v. Board of Public Instruction of Escambia County, Fla. 1959, 113 So.2d 368; Sharer v. Hotel Corporation of America, Fla. 1962, 144 So.2d 813. In view of the fact that Chapter 65-1916 provides for an exclusive franchise and Chapter 65-1927, which came after it, provides for a non-exclusive franchise, the court, under the statutory construction applicable, properly concluded that the franchise itself was not exclusive as to all forms of television reception. The franchise not being exclusive, it follows that the county agreement of 1965, and the legislative enactments do not give Cable-Vision an exclusive franchise to operate a cablevision system or a translator system. From the language of Chapter 65-1927, Cable-Vision only has a franchise to operate a cablevision system. Therefore, there can be no prohibition by virtue of the 1965 agreement and Chapters 65-1916 and 65-1927, for the county to construct, operate and maintain television broadcast translator stations. Cable-Vision contends that county ordinance 5-1973, authorizing translator stations is a constitutional impairment of contract. This is not so because the trial court found, after taking testimony, which was uncontroverted, that there was a distinct difference between a cablevision system and the operation of a television broadcast translator system. From the testimony it appears that a cable television system is a direct wire reception of television and a television broadcast translator system is an over-the-air broadcast facility which does not involve wire transmission by picking up television signals from the air for broadcast over the air. Furthermore, while it appears that the operation of translator stations could substantially harm Cable-Vision's business, there is no evidence in the record to this effect.
Cable-Vision next contends that the county did not have authority to authorize construction and to operate television broadcast translator stations; that Monroe County being a non-chartered county, has its power of self-government from Article VIII, § 1(f) of the 1968 Florida Constitution which provides:
"(f) Non-charter government. Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict."
Cable-Vision contends that such authority to construct and operate television broadcast translator stations is not within one of the powers authorized by Article VIII of the Constitution, supra, and delegated under § 125.01(1)(f), (1)(w) and (3)(b), Fla. Stat., which provide in pertinent part:
"(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
* * * * * *
(f) Provide parks, preserves, playgrounds, recreation areas, libraries, museums, historical commissions, and other recreation and cultural facilities and programs;
* * * * * *
(w) Perform any other acts not inconsistent with law which are in the common interest of the people of the county, and exercise all powers and privileges not specifically prohibited by law.
* * * * * *
(3)(b) The provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the state constitution."
*154 Therefore, it is argued, this county ordinance # 5-1973 is invalid because it is inconsistent with a general or special law, namely Chapter 65-1916 and Chapter 65-1927, Laws of Florida. We disagree. The mere fact that Chapters 65-1916 and 65-1927 grant Cable-Vision a franchise, which we determine to be non-exclusive, to operate a cable television station, does not, in itself, prohibit the county from constructing and operating a television broadcast translator station especially where there is a difference between a cablevision system and a translator system.
Cable-Vision relies on the case of Davis v. Gronemeyer, Fla. 1971, 251 So.2d 1. However, that case is distinguished from the instant case as there was an attempt by a non-charter county, under home rule, to repeal a special act of the legislature which created a civil service system of county employees contravening a special act of the legislature. Cable-Vision cites the case of Byers v. Board of Supervisors of the County of San Bernardino, 262 Cal. App.2d 148, 68 Cal. Rptr. 549 (1968), which held that where the County Board of Supervisors sought an agreement to establish television broadcast translator stations under a somewhat similar provision of a California County Code, the county had no power or authority to provide translator stations by taxing its citizens. However, the Code involved in the Byers case did not include a provision for "recreational and cultural facilities and programs."
The county, in its ordinance # 5-1973, authorizing the Board of County Commissioners of Monroe County to construct and obtain the necessary licenses for the operation of television broadcast translator stations, recites that there are unsatisfactory conditions existing in the reception of direct television signals now available to the public in the county and that no television broadcast stations are operating in close enough proximity to Monroe County to effect any relief from this condition; that the county feels it should provide its citizens with the opportunity to obtain a better life by being more enlightened in the areas of political, cultural, social and educational communication available by broader access to the television media and that television broadcast translator stations provide the only means of receiving and transmitting such communication. Today, counties provide vast cultural and recreational facilities for the welfare of their citizens. Television does have educational programs and is virtually a necessary means of transmitting what is thought to be cultural enlightenment, and the mere fact that Cable-Vision has a franchise for a cable television system should not prevent the citizens of the county from obtaining other types of television service especially where the geographical and economic situation does not adequately provide access to such service. Determination of what is a county purpose may be express or implied in the provisions of the ordinance. The courts will not interfere with such determination unless it has no legal or practical relationship to a valid county purpose. State v. Brevard County, 1930, 99 Fla. 226, 126 So. 353, 355.
Since the franchise to Cable-Vision was not exclusive, and there appears to be, in this case, a valid county purpose, the county has the authority, under constitutional self-government and § 125.01, Fla. Stat., to construct, maintain and operate television broadcast translator stations. The declaratory judgment of the trial court is affirmed except as to that part of the judgment which declares that Cable-Vision has an exclusive right to furnish cablevision services.
Affirmed in part and reversed in part.
NOTES
[1] The Agreement entered into between Monroe County and Cable-Vision, Inc., on March 9, 1965:

* * * * *
"The County of Monroe, ... does hereby grant to said Cable-Vision, Inc., an exclusive franchise for the operation of a cable television system in Monroe County, Florida, under the following terms and conditions:
Section 1. Effective upon the date of the execution of this Agreement, Cable-Vision, Inc., a Florida Corporation, be, and it is hereby granted for a period of 30 years and any renewals and extensions thereof as authorized by the Laws of the State of Florida, the right, privilege, license, and/or franchise to furnish direct wire reception of television, radio, music, closed circuit programs, signals, and services to the inhabitants of the County of Monroe, Florida, or any person, firm or corporation within said county limits ..." (emphasis added)
[2] Chapter 65-1916:

"AN ACT giving to the county commissioners of Monroe county the power to grant franchises or licenses for the establishment, maintenance and operation of community antenna systems, closed circuit or cable television systems, or any other similar communication or distribution systems or services; .. .
* * * * *
Be It Enacted by the Legislature of the State of Florida:
Section 1. The county commissioners of Monroe county whenever it shall be made to appear to them that the convenience of the public requires the establishment, maintenance and operation within the county of a community antenna system or systems, closed circuit or cable television system or systems, or any other similar communication or distribution systems or services are hereby given the power to grant by resolution a franchise or license to any company, corporation, partnership or individual ...
* * * * *
Section 3. The county commissioners under the exercise of the power given by this act may grant an exclusive or limited franchise or license, operating in either a portion or throughout the limits of Monroe county, including municipalities therein. The franchise or license rights contemplated by this act when granted within the purview hereof shall continue in such grantee, or personal representatives, successors, or assigns for the full term granted . .." (emphasis added)
[3] Chapter 65-1927:

* * * * *
"AN ACT granting to Cable-Vision, Inc., a Florida corporation, the right, privilege, license and franchise, for a period of thirty (30) years for the operation of a cable television system throughout Monroe county, Florida, and all municipalities therein, including the furnishing of direct wire reception of television, radio, music, closed circuit programs, signals, and similar services, together with necessary rights to erect and maintain poles, wires, fixtures, towers, amplifiers, electronic equipment, etc., along the streets, alleys, avenues and highways and other public places throughout the county and all municipalities therein; providing the terms and conditions of such franchise; prescribing charges and service rates; providing for taxes; providing for termination and lease of this franchise and providing an effective date.
Be It Enacted by the Legislature of the State of Florida:
* * * * *
Section 2. Cable-Vision, Inc., a Florida corporation, its successors or assigns is granted for a period of thirty (30) years and during the period of any renewals and extensions thereof as may hereafter be authorized, the right, privilege, license, and franchise to furnish direct wire reception of television, radio, music, closed circuit programs, signals, and services to the inhabitants of Monroe county, or any person, firm or corporation within said county limits, including the municipalities therein, ..." (emphasis added)
* * * * *
[4] Ordinance No. 5-1973:

* * * * *
"WHEREAS, the Board of County Commissioners of Monroe County, Florida, have by petition and other means has had called to its attention the unsatisfactory conditions existing in the reception of direct television signals now available to the public in said County, and
WHEREAS, there are no television broadcast stations operating in a close enough proximity to Monroe County to afford any relief from this condition, and
WHEREAS, the Board of County Commissioners of Monroe County, Florida, now has the opportunity to provide the residents of said County with adequate and satisfactory direct television reception through television translator systems, and
WHEREAS, the Board of County Commissioners of Monroe County, Florida feels it should provide its citizens the opportunity to obtain a better life by being more enlightened in the areas of political, cultural, social and educational commentary, available by broader access to the television media, and (emphasis added)
* * * * *
WHEREAS, the Board of County Commissioners feel that educational television is necessary in the development of the educational and cultural background of the children of the County, and (emphasis added)
WHEREAS, the transmission of television signals for direct reception is regulated by the Federal Communications Commission, and
WHEREAS, the Board of County Commissioners is empowered to obtain the necessary license under Section 74.732 of the Federal Communications Rules and Regulations, Volume 3, dated September, 1972, which would allow the Board of County Commissioners to correct this present denial of direct television service to the people of Monroe County, and (emphasis added)
WHEREAS, the Board of County Commissioners of Monroe County, Florida, are able to finance, install, maintain and operate such a service, and (emphasis added)
WHEREAS, the distance and peculiar geographical features of Monroe County, Florida make it impossible for its citizens to have broad and acceptable direct television reception by any other method, now therefore,
BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF MONROE COUNTY, FLORIDA:
Section 1. The Board of County Commissioners of Monroe County, Florida, is hereby authorized and empowered to apply for and obtain the necessary licenses for the operation of television broadcast translator stations in Monroe County, Florida under Section 74.732 of the Federal Communications Rules and Regulations ... said television broadcast translator stations being defined in Subsection (2) of Section 74.701 of said Federal Communications Rules and Regulations as follows:
(a) Television broadcast translator station A station in the broadcasting service operated for the purpose of retransmitting the signals of a television broadcast station, another television broadcast translator station, or a television translator relay station, by means of direct frequency conversion and amplification of the incoming signals without significantly altering any characteristic, of the incoming signal other than its frequency and amplitude, for the purpose of providing television reception to the general public.
Section 2. Said Board of County Commissioners is authorized and empowered to expend County monies necessary for the installation of and maintenance of television broadcast translator stations and related towers and buildings." (emphasis added)
* * * * *