Mr. Stephen W. Fisk Attorney Holiday Park, Park and Recreation District 217 South Nassau Street Venice, Florida 33595
Dear Mr. Fisk:
This is in response to your request for an opinion asking substantially the following question:
 DOES CH. 81-441, LAWS OF FLORIDA, AUTHORIZE THE BOARD OF TRUSTEES OF HOLIDAY PARK, PARK AND RECREATION DISTRICT TO ESTABLISH AND OPERATE A CABLE TELEVISION SERVICE WITHIN THE DISTRICT WHICH WOULD BE A MANDATORY SERVICE TO EACH LOT OWNER AND INCREASE THE ASSESSMENT OF EACH AND EVERY LOT FOR SAID SERVICE?
Your inquiry states that the Board of Trustees of the Holiday Park, Park and Recreation District is considering the purchase of equipment capable of receiving satellite transmissions for the purpose of providing cable television service to the residents of the district. The project would be financed by an increase in the annual assessment provided in s. 7 of Ch. 81-441, Laws of Florida. Accordingly, you ask whether the board is authorized by the district's enabling act to undertake such project.
The Holiday Park, Park and Recreation District was created by Ch. 81-441, Laws of Florida, which by its terms took effect upon approval of a majority of the qualified electors in the district participating in a special election. The district has the power to "acquire and hold property, sue and be sued, enter into contracts and perform other functions necessary or desirable to the carrying out of the provisions and intent of this act." Section 8, Ch. 81-441, Laws of Florida. Section 13 further provides that the trustees of the district "may in their discretion assume the cost of installing and maintaining entrance parkways and street lighting within the district and may acquire and dispose of any other facilities for the general purpose of the district." (e.s.) Section 15 specifies further powers of the trustees, including supervision of real and personal property of the district, determination of the tax to be assessed annually within the district pursuant to s. 7 of the act, issuance of bonds or notes or other evidence of indebtedness of the district for the purpose of obtaining funds, promulgation of "reasonable rules and regulations governing the use of the facilities of the district," and "administration and enforcement of the deed restrictions . . . for properties within the district." The act declares each parcel of property in said district to be uniformly and generally benefitted by the provisions of the act and specifically authorizes a contract or assignment involving the initial acquisition of property constituting "the recreational facilities and laundromat which presently exist within the territory included" in the district. Sections 18 and 22, Ch. 81-441. Finally, s. 26, Ch. 81-441, directs that "[t]he provisions of this act shall be liberally construed in order to effectively carry out the purpose of this act in the interest of the public."
Statutory entities such as special districts possess only such powers as are expressly given or necessarily implied because essential to carry out powers expressly granted. Forbes Pioneer Boat Line v. Board of Com'rs of Everglades Drainage District,82 So. 346 (Fla. 1919); AGO's 84-40, 82-89, 80-55, 80-11, 76-200, 74-169, 73-374, and 69-130. Thus, except as otherwise specifically provided by its enabling legislation, it appears that the district's authority is limited to the acquisition of "facilities for the general purpose of the district," i.e., parks and recreation.
This office previously considered the meaning of the phrase "recreational facility" in the context of the authority of a park and recreation district created by special law. See, AGO 73-309, concluding that such district was authorized to acquire and operate an auditorium since the district was specifically authorized by law to operate a "recreational hall" and it was determined that the auditorium in question was in effect a "recreational hall." In that opinion this office recognized that "recreational facility" has been defined to include such diverse areas as public parks, parkways, playgrounds, playfields, swimming pools, public baths, bathing places, and gymnasiums; "[s]o long as a facility is used for public recreational purposes it would qualify as a recreational facility." See also, State v. Village of North Palm Beach, 133 So.2d 641 (Fla. 1961) (operation of golf course was a recreational purpose within statute authorizing municipality to acquire land for recreational purposes). And see, AGO 74-318 (facility which is not to be used for a public recreational purpose will not qualify as a recreational facility). Compare, Cable-Vision, Inc. v. Freeman, 324 So.2d 149 (3 D.C.A.Fla., 1975), app. dismissed, 336 So.2d 1180 (Fla. 1976), in which the court approved a county's operation of a television broadcast translator station, relying on the county's authority under constitutional self government and s. 125.01, F.S., specifically s. 125.01(1)(f), F.S., authorizing the county to provide "parks, preserves, playgrounds, recreation areas, libraries, museums, historical commissions, and other recreation and cultural facilities and programs;" however, the court appears to have based its holding on the nature of television as a "means of transmitting what is thought to be cultural enlightenment." (e.s.) 324 So.2d at 154.
Accordingly, in view of the above authorities, I am unable to conclusively state that a cable television service is a recreational facility within the general purposes of the Holiday Park, Park and Recreation District, since it would not appear that a cable television service is a public recreational facility within the meaning of that term as explicated in AGO 73-309. See, Edgerton v. International Company, 89 So.2d 488 (Fla. 1956) (reasonable doubt as to authority for exercise of a power should be resolved against exercise of such power). Moreover, a cable television service would appear to be more in the nature of, or analogous to, a public utility, rather than a recreational facility. See, 86 C.J.S. Telegraphs, Telephones, Radio 
Television s. 316.2, at supplement to p. 351 (cable television system undertaking to maintain its own distribution system is analogous to telephone, electric, gas, water and other companies). My examination of Ch. 81-441, Laws of Florida, and Ch. 82-380, Laws of Florida, amending s. 5 of Ch. 81-441, reveals no provision which purports to authorize the Board of Trustees of the Holiday Park, Park and Recreation District to establish and operate such a service.
Finally, I note that Ch. 81-441, Laws of Florida, expressly grants only two powers to the Holiday Park, Park and Recreation District which are outside of or not covered by the "general purpose" of the district, i.e., parks and recreation. See, ss. 15(h) and 22 of the act, providing respectively for the district's enforcement of certain deed restrictions and for the acquisition of existing laundromat facilities. By application of the rule "expressio unius est exclusio alterius," the express enumeration of these two powers must be held to exclude the exercise of any other power not relating to parks and recreational facilities. See, Orr v. Trask,464 So.2d 131 (Fla. 1985); Dobbs v. Sea Isle Hotel, 56 So.2d 341
(Fla. 1952); Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944).
In summary, then, unless and until legislatively or judicially determined otherwise, I am of the opinion that Ch. 81-441, Laws of Florida, does not authorize the Board of Trustees of the Holiday Park, Park and Recreation District to establish and operate a mandatory cable television service within the district.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General