609 So.2d 735 (1992)
STATE of FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, DIVISION OF CONSUMER SERVICES, Appellant,
v.
QUICK CASH OF TALLAHASSEE, INC., a Florida Corporation, Appellee.
No. 92-41.
District Court of Appeal of Florida, First District.
December 4, 1992.
Gabriel Mazzeo, Dept. of Agriculture and Consumer Services, Tallahassee, for appellant.
Larry D. Simpson of Judkins & Simpson, P.A., Tallahassee, for appellee.
WEBSTER, Judge.
The Department of Agriculture and Consumer Services, Division of Consumer Services (Division) appeals a summary final judgment in favor of Quick Cash of Tallahassee, Inc. (Quick Cash). The summary judgment was based upon the conclusion of law that the Division lacked standing to bring the action, which sought injunctive relief and damages, for alleged violations of various of the state's laws "relating to consumer protection." Because we conclude that the legislature has authorized the Division to maintain such actions, we reverse.
The Division's complaint alleges that Quick Cash is a "pawnbroker," as defined in section 538.03(1)(c), Florida Statutes (Supp. 1990); and that it is registered with the Department of Revenue as a "secondhand dealer," pursuant to section 538.09, *736 Florida Statutes (Supp. 1990). According to the complaint, Quick Cash "is in the business of ... making loans to consumers using the consumer's automobile, or the automobile's title, as collateral for the loan." The complaint alleges, further, that Quick Cash "attempts to disguise the interest charged on the loans through a lease of the automobile to the consumer for a `rental fee[,]'" which is, "in fact[,] interest charged on the principal of the loan"; and that "[t]he interest rates for these loans are usurious, and in violation of [c]hapter 687, Florida Statutes."
The complaint also contains the following allegations:
The Division is charged with the responsibility of... protecting the rights and interests of the consumers of the State of Florida. The Division has authority pursuant to [s]ection 570.544(11), Florida Statutes (Supp. 1990), to commence legal proceedings to enjoin those persons the Division has reason to believe are in violation of the laws of the state relating to consumer protection and may seek appropriate relief on behalf of consumers who have been damaged by such violations.
According to the complaint, Quick Cash's "business of ... making loans to consumers using the consumer's automobile, or the automobile's title, as collateral for the loan" constitutes "unfair and deceptive acts or practices in the conduct of trade or commerce, as contemplated and prohibited by [s]ection 501.204, Florida Statutes (Supp. 1990)." In addition, the complaint alleges that Quick Cash's business violates the following "laws of the state relating to consumer protection," and "has damaged and is damaging the consumer of this state": usury laws (ch. 687, Fla. Stat.); pawnbroker laws (ch. 538, Fla. Stat.); consumer finance laws (ch. 516, Fla. Stat.); motor vehicle retail sales finance laws (ch. 520, Fla. Stat.); motor vehicle sales laws (ch. 320, Fla. Stat.); and federal truth-inlending laws (15 U.S.C. §§ 1601 et seq.). The complaint requests the entry of temporary and permanent injunctions prohibiting Quick Cash from committing further "deceptive acts or practices" or violating any of the "consumer protection laws" cited; the entry of "a permanent prohibitory injunction restoring to any Florida consumers any motor vehicle lost as a result of an unlawful transaction as described in this complaint, or the value thereof"; the award of damages to Quick Cash's "Florida consumers ... in an amount equal to three-fold the damages sustained by the consumer, but not less than $200 each"; forfeiture to Quick Cash's "Florida consumers" of "all interest exceeding 18 percent per annum[,] ... all interest and all principal where interest exceeds 24 percent per annum[] and ... double the amount of interest collected on any loan where interest exceeds 18 percent per annum"; and attorney fees and costs.
Quick Cash filed an answer, in which it admitted that it was a "pawnbroker" and that it was registered with the Department of Revenue as a "secondhand dealer"; and denied all of the remaining material allegations of the complaint. Quick Cash also raised as affirmative defenses failure to state a cause of action; that the Division lacked "standing and statutory authority to bring [the] action"; and that the Division had singled out Quick Cash "for selective prosecution[,] while others similarly situated are permitted to operate under color of state law," thereby violating Quick Cash's "right[s] to equal protection of the laws and ... due process under the Florida and Federal constitutions."
The Division then filed a motion requesting partial summary judgment on two issues, as to which it represented there was no genuine issue as to any material fact: "[w]hether a pawn, and specifically a `buy-sell agreement' as defined in [s]ection 538.03(1)(d)2, Fla. Stat. (Supp. 1990), is permitted to be made with an automobile"; and whether the Division "has statutory authority and standing to bring this action." Quick Cash responded with its own motion for summary judgment, representing that no genuine issue existed as to any material fact, and that it was entitled to the entry of a final judgment holding that the Division "lacks statutory authority and standing to bring this action"; and "[t]hat the laws of *737 the State of Florida do not prohibit the pawn of an automobile and/or automobile title."
To support its claim that it "ha[d] statutory authority and standing to bring this action," the Division relied upon section 570.544(11), Florida Statutes (Supp. 1990). That section reads:
If the [D]ivision by its own inquiry, or as a result of complaints, has reason to believe that a violation of the laws of the state relating to consumer protection has occurred or is occurring, that the interests of the consumers of this state have been damaged or are being damaged, or that the public health, safety, or welfare is endangered or is likely to be endangered by any consumer product or service, the [D]ivision may commence legal proceedings in circuit court to enjoin such act or practices or the sale of such product or service and may seek appropriate relief on behalf of such consumers. Upon application by the [D]ivision, a hearing shall be held within 3 days after the commencement of such proceedings.
The Division argued that the complaint alleged facts which, if true, would establish (1) that Quick Cash had violated "laws of the state relating to consumer protection"; (2) "that the interests of the consumers of this state [had] been damaged or [were] being damaged" by Quick Cash; and (3) "that the public health, safety, or welfare [was] endangered or [was] likely to be endangered by [the] consumer ... service" being offered by Quick Cash. Therefore, according to the Division, section 570.544(11) clearly conferred upon it the authority to maintain the action.
In response, Quick Cash argued that section 570.544(11) had not been intended by the legislature to expand the Division's authority. Rather, according to Quick Cash, it was necessary to read section 570.544(11) together with section 570.544(10), which reads:
If the [D]ivision by its own inquiry, or as a result of complaints, has reason to believe that a violation of the laws of the state relating to consumer protection has occurred or is occurring, it may conduct an investigation, subpoena witnesses and evidence, and administer oaths and affirmations. If, as a result of the investigation, the [D]ivision has reason to believe a violation of chapter 501, other than a violation of ss. 501.91-501.923 [the "Antifreeze Act of 1978"], has occurred, the [D]ivision with the coordination of the Department of Legal Affairs and any state attorney, if the violation has occurred or is occurring within his judicial circuit, shall have the authority to bring an action in accordance with the provisions of chapter 501.
According to Quick Cash, section 570.544(11) was intended by the legislature to permit the Division to seek injunctive relief on its own, without the necessity of coordinating with either the Department of Legal Affairs or a state attorney, only when a violation of chapter 501 (other than sections 501.91 through 501.923) constituting an immediate danger to the public health, safety or welfare had occurred. Because the Division had conceded in a legal memorandum that "[t]he instant case does not involve [c]hapter 501," Quick Cash contended that the Division did not have standing to maintain it.
In its summary judgment, although noting that Quick Cash had not attacked section 570.544(11) as unconstitutional, the trial court nevertheless expressed concern as to the constitutionality of that statute if it were to be interpreted as argued by the Division. The trial court recognized that the legislature had not specified to what "laws" the phrase "the laws of the state relating to consumer protection" had been intended to refer. However, it noted that chapter 501, Florida Statutes, was titled "Consumer Protection." It noted also that the Division's interpretation of section 570.544(11) would permit the argument that laws relating to many types of transactions already heavily regulated by other departments or agencies  e.g., banking, securities, public utilities, insurance, etc.  were "laws of the state relating to consumer protection" and, therefore, within the sphere of the Division's responsibilities. Accordingly, the trial court concluded that *738 "[t]he Division's determination that it is not limited to enforcement of consumer protection laws as set forth in [c]hapter 501 is clearly erroneous"; and
that the Division is only authorized to bring an action to enforce consumer protection laws as specified in [c]hapter 501, other than a violation of [s]ections 501.91-501.923, if it has reason to believe that a violation of such statute has occurred or is occurring, and it can only do so without the coordination of the Department of Legal Affairs and the State Attorney of the Second Judicial Circuit if (1) it has reason to believe that such violation of [c]hapter 501 had damaged or is damaging the interests of the consumers of this State, or (2) that the public health, safety, and welfare is endangered or is likely to be endangered by any consumer product or service. The Division has standing only to seek injunctive relief from violations of [c]hapter 501, and other relief which may be deemed appropriate by the Court, as may relate to [c]hapter 501 violations.
Because the Division had conceded that "[t]he instant case does not involve [c]hapter 501," the trial court denied the Division's motion for partial summary judgment, and granted Quick Cash's motion for summary judgment. While we share the trial court's concern regarding the logical implications of the Division's interpretation of section 570.544(11), we are unable to agree with the trial court's interpretation of that statute.
It is our responsibility to determine what the legislature intended when it passed section 570.544(11). Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condo. Ass'n, 581 So.2d 1301 (Fla. 1991). In A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931), the court said:
The intention and meaning of the Legislature must primarily be determined from the language of the statute itself and not from conjectures aliunde. When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
Accord Streeter v. Sullivan, 509 So.2d 268 (Fla. 1987); Holly v. Auld, 450 So.2d 217 (Fla. 1984); Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla. 1988). When used in a statute, words of common usage should be given their ordinary meanings. See, e.g., Citizens v. Public Service Comm'n, 425 So.2d 534 (Fla. 1982); Seaboard System R.R., Inc. v. Clemente, 467 So.2d 348 (Fla. 3d DCA 1985). "Furthermore, the legislature is presumed to know the meaning of the words chosen and to have expressed its intent by use of those words." Baskerville-Donovan, 581 So.2d at 1302-03. Therefore, in the absence of a statutory definition, it must be assumed that the legislature intended the common or ordinary meanings of the words used to apply. See, e.g., State v. Buckner, 472 So.2d 1228 (Fla. 2d DCA 1985); State v. Little, 400 So.2d 197 (Fla. 5th DCA 1981). The courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." American Bankers Life Assurance Co. of Florida v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968). Accord Holly v. Auld, 450 So.2d 217 (Fla. 1984).
We find the language of section 570.544(11) to be clear and unambiguous. Therefore, there is nothing to construe. The words used by the legislature must be given their plain and ordinary meanings. Reading the words as written, the apparent intent of the legislature was to empower the Division to act as the protector of consumer interests; and to sue on behalf of the state's consumers when it "has reason to believe [1] that a violation of the laws of the state relating to consumer protection has occurred or is occurring[;] [2] that the interests of the consumers of this state have been damaged or are being damaged[;] or [3] that the public health, safety, *739 or welfare is endangered or is likely to be endangered by any consumer product or service... ."
Because we conclude that section 570.544(11) is clear and unambiguous, we find it unnecessary to resort to rules of statutory construction. However, were we to do so, we would find the trial court's interpretation of the phrase "laws of the state relating to consumer protection" as intended to refer only to chapter 501, Florida Statutes (except sections 501.91 through 501.923) to be unsupported by any such rule. On the contrary, the fact that the legislature referred specifically to chapter 501 violations in section 570.544(10), but did not do so in section 570.544(11), is strong evidence that it intended the phrase "laws of the state relating to consumer protection" used in section 570.544(11) to refer to something other than chapter 501. See, e.g., Department of Professional Regulation v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984); Ocasio v. Bureau of Crimes Compensation Division of Workers' Compensation, 408 So.2d 751 (Fla. 3d DCA 1982). Moreover, the trial court's interpretation would appear at odds with the rule that "[t]he provisions of statutes enacted in the public interest should be given a liberal construction in favor of the public." Department of Environmental Regulation v. Goldring, 477 So.2d 532, 534 (Fla. 1985).
We have not overlooked the fact that subsection (11) appears to be somewhat inconsistent with the other parts of section 570.544, which other parts seem to contemplate that the Division's principal roles would involve coordination and advice, rather than enforcement. However, we note that, to the extent that there might be some internal inconsistency, subsection (11) would prevail, because it is the last expression of the legislature's will, both in point of time and in order of arrangement. See, e.g., State v. City of Boca Raton, 172 So.2d 230 (Fla. 1965); Cable-Vision, Inc. v. Freeman, 324 So.2d 149 (Fla. 3d DCA 1975).
Likewise, we have not overlooked the fact that, in dicta, the Second District Court of Appeal has indicated that it does not believe that the legislature intended such an "expansive grant of authority" to the Division. Quick Cash of Clearwater, Inc. v. Department of Agriculture and Consumer Services, Division of Consumer Services, 605 So.2d 898, 901 (Fla. 2d DCA 1992). The court was not required to determine the full extent of the Division's powers pursuant to section 570.544(11) because it concluded that the Division's authority clearly extended to violations of chapter 501; the Division had pleaded violations of chapter 501; and Quick Cash conceded that the Division possessed the power under the statute to address perceived violations of chapter 501. (In contrast, although violations of chapter 501 were also alleged in the complaint filed below, the Division later represented to the trial court that "[t]he instant case does not involve [c]hapter 501.") While expressing doubt as to whether the legislature had intended to grant the Division the powers implied by the Division's interpretation of the statute, the court recognized that, "if read literally," the statute appeared to give the Division very broad powers. Because it felt that it was unnecessary to reach the issue, however, the court failed to explain why it did not believe that the statute should be read as written by the legislature.
We share the concerns of the trial court and the Second District Court of Appeal regarding the problems that might result from an interpretation of section 570.544(11) based upon the plain meaning of the words used. We believe it not unlikely that disputes will arise with some frequency as to whether the Division or some other department of the executive branch is responsible for dealing with a particular abuse of a consumer interest. Moreover, there would appear to be a distinct possibility that those charged with violating some law "relating to consumer protection" would be subjected to investigation by, and litigation with, multiple governmental authorities. However, our role is limited to determining what the legislature intended when it passed the statute. Whether what it has passed is wise or not is for the legislature to decide. See, e.g., Moretrench American Corp. v. Taylor Woodrow Construction Corp., 565 So.2d 861 (Fla. 2d *740 DCA 1990); Pfeiffer v. City of Tampa, 470 So.2d 10 (Fla. 2d DCA 1985). We express no view regarding the constitutionality of section 570.544(11), because Quick Cash did not raise that issue in the trial court.
We hold today only that section 570.544(11) vests in the Division the power and authority to file and to maintain civil actions such as that involved here. The summary judgment entered by the trial court held that it did not. That was the sole basis for the trial court's ruling. Accordingly, we must reverse and remand for further proceedings. On remand, the trial court shall address the issues remaining to be litigated.
REVERSED and REMANDED, with directions.
BOOTH and SHIVERS, JJ., concur.