COHEN, J.
Edward T. Byrd & Company, Inc. (“Byrd”), sued WPSC Venture I (“WPSC”) under theories of breach of contract and quantum meruit to recover a mortgage brokerage fee it allegedly earned for obtaining a $21 million loan commitment to refinance WPSC’s existing mortgage on a shopping center. On cross-motions for summary judgment, Byrd contended that WPSC breached the contract by failing to pay the fee despite the loan’s failure to close, and WPSC countered that no fee was payable because the application it unilaterally signed did not meet the requirements of the Mortgage Brokerage and Mortgage Lending Act (“MBMLA” or “Act”).[1] We affirm the trial court’s final judgment entered after it granted WPSC’s motion for final summary judgment and denied Byrd’s motion.
WPSC signed an application for a mortgage loan commitment with Byrd in order to refinance an existing mortgage loan due to mature in December 2004. Timing was critical for the shopping center to continue in business. Byrd obtained a loan commitment, which WPSC approved. Despite extensions to the closing date from July 14, 2004, to September 9, October 9, and, finally, October 18, 2004, no closing occurred due to problems that ensued after the FBI arrested Edward Byrd on criminal charges. Mr. Byrd immediately placed the company for sale and difficulties arose concerning its status as a servicing agent for the lender and whether it would remain in business. Byrd was dissolved and after reinstatement, it filed suit to obtain the mortgage brokerage fee.
The narrow issue on appeal is whether an individual coborrower, cosignor, or guarantor to a commercial mortgage loan is a “borrower” under the Act. This issue is implicated because Robert Miller, the president of one of WPSC’s general partners, was required to execute a personal guaranty to indemnify the lender indefinitely. A “borrower” is not defined in the Act. However, one subpart of the definition of “mortgage loan” describes a “[ljoan on commercial real property if the borrower is a natural person or the lender is a noninstitutional investor .... ” § 494.001(20)(b). In relevant part, the Act also states:
*981 494.0038 Mortgage broker disclosures.—
(1)(a)1. A person may not receive a mortgage brokerage fee except pursuant to a written mortgage brokerage agreement between the mortgage brokerage business and the borrower which is signed and dated by the business and the borrower.
[[Image here]]
494.0042 Brokerage fees.—
(3) At the time of accepting a mortgage loan application, a mortgage brokerage business may receive from the borrower a nonrefundable application fee. If the mortgage loan is funded, the nonrefundable application fee shall be credited against the amount owed as a result of the loan being funded. A person may not receive any form of compensation for acting as a mortgage broker other than a nonrefundable application fee, a fee based on the mortgage being funded, or a fee which complies with s.494.00421.
WPSC contends the Act’s failure to define the term “borrower” renders it ambiguous and subject to statutory interpretation. WPSC argues that “borrower” should be construed consistently with section 494.0079(3), a related consumer protection statute, which defines a borrower as “any natural person obligated to repay a loan, including, but not limited to, a coborrower, cosignor, or guarantor.”
Byrd argues the Act did not contemplate an individual guarantor be considered a borrower. In support, Byrd asserts that the Act’s definitions for “[a]ct as a mortgage broker” and “[mjortgage loan” are inseparably intertwined with the terms for “[mjortgage brokerage fee” and “[mjort-gage brokerage business.” Read together, Byrd concludes it can collect its fee under section 494.0038(1)(a)1. See §§ 494.001(3), (18M20).
At the summary judgment motion hearing, WPSC directed the trial court’s attention to the Legislature’s 2009 revision of the Act, which, effective January 1, 2010, adopted section 494.079(3)’s definition for borrower, almost verbatim.[2] Section 494.001(1), Florida Statutes (2010), now reads: “Borrower means a person obligated to repay a mortgage loan and includes, but is not limited to, a coborrower, cosig-nor, or guarantor.”
This court reviews de novo the trial court’s legal interpretation of the MBMLA. See Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001).
It is axiomatic that the plain meaning of a statute is the first rule of statutory construction. State, Dep’t of Agric. & Consumer Servs. v. Quick Cash of Tallahassee, Inc., 609 So.2d 735, 738 (Fla. 1st DCA 1992). When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984).
Black’s Law Dictionary defines “borrower” and “guarantor” differently:
Borrower. A person or entity to whom money or something else is lent.
Guarantor. One who makes a guaranty or gives security for a debt.
Black’s Law Dictionary 179, 711 (7th ed. 1999). These definitions are not the same and they usually play two different roles in a loan transaction. Yet, in a sister statute under chapter 494, a borrower includes a guarantor. Because the term borrower is susceptible of different meanings, it is ambiguous and the court must use principles of statutory construction to resolve the ambiguity. See Barco v. School Bd. of Pinellas County, 975 So.2d 1116, 1122 (Fla.2008).
*982 Notably, the First District applied the Act to a corporate borrower in Carlton Palms Hotel, Inc. v. Fidelity Trust, Inc., 728 So.2d 358 (Fla. 1st DCA 1999). Although Byrd criticizes the holding in Carlton Palms as nothing more than a rejection of summary judgment, the factual dispute involved the Act’s application in either case. Either the Act applied to disallow the mortgage brokerage fee if the requirements of section 494.0021 were not met or, if the defect was attributable to Carlton Palms, then the fee could not be charged unless the loan was funded. What remains unanswered in Carlton Palms is whether the Act applied because the undefined party described in the style of the case as “etc.” was, in fact, an individual borrower, cosignor, or guarantor. Nevertheless, the decision in Carlton Palms, as evidence of the state of the law, lends support to WPSC’s argument that the statute is ambiguous.
Byrd, citing Ieracitano v. Shaw, 815 So.2d 787 (Fla. 4th DCA 2002), contends that the Act’s definitional section applies to the exclusion of any other meaning. Ieracitano is inapposite because the court merely interpreted the definitional section to apply to section 494.0021 and held that the “notwithstanding” language only precluded the application of a contrary substantive provision. There was no statutory ambiguity and, more importantly, the case sheds no light on the definition of borrower, the issue here.
“To discern legislative intent, courts must consider the statute as a whole, including the evil to be corrected, the language, title, and history of its enactment, and the state of law already in existence on the statute.” Fla. Dep’t of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So.2d 1260, 1266 (Fla.2008), quoting Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). The purpose of the MBMLA was to regulate brokers and protect individuals who contract with a mortgage broker for a mortgage loan by requiring specific statutory disclosures.
Strict construction of a statute applies when the provisions are penal and highly regulatory. See Equity Corp. Holdings, Inc. v. Dep’t of Banking & Fin., Div. of Fin., 112. So.2d 588, 590 (Fla. 1st DCA 2000) (interpreting strictly chapter 494’s regulation of those who “act as a mortgage lender” and imposing sanctions for improper licensing in order to give fair notice to those covered by the penal and highly regulatory statute). The general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively. State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995). Regulatory statutes are not always strictly construed, particularly in the sphere of consumer protection. Generally, remedial statutes should be liberally construed in favor of granting access to the remedy provided by the Legislature. See, e.g., Golf Channel v. Jenkins, 752 So.2d 561, 565-66 (Fla.2000); Broward v. Jacksonville Med. Ctr., 690 So.2d 589, 590 (Fla.1997); Martin County v. Edenfield, 609 So.2d 27, 29 (Fla.1992).
Byrd contends that the Act’s amendments were not a mere clarification, but a substantial rewrite of the statute. Reviewing the breadth of chapter 2009-241 with particular attention to mortgage broker transactions, the revised law implemented stricter regulation of mortgage broker licensing, imposed additional administrative penalties and fines on mortgage brokers and afforded greater protection for individual borrowers. Although a retroactive application of the Act’s new licensing and penalty provisions would be unduly harsh, the use of the clarified definition for “borrower” would comport with *983 a liberal reading of the Act’s remedial purposes. In the context of the alleged statutory deficiencies in this case, section 494.0038’s revisions are remedial. Reading the Act with an eye toward its remedial purpose and clear intent to protect the individual in his or her dealings with mortgage brokers and lenders, the inclusion of an individual guarantor within the definition of “borrower” to mean “a person obligated to repay a mortgage loan,” fulfills the Act’s statutory purpose and intent.
Generally, courts are permitted to consider subsequently enacted legislation in determining the meaning of a statute. Martin Daytona Corp. v. Strickland Constr. Servs., 941 So.2d 1220, 1224 (Fla. 5th DCA 2006). “The mere change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehension as to existing law.” State ex rel. Szabo Food Servs., Inc. of North Carolina v. Dickinson, 286 So.2d 529, 531 (Fla.1973).
For the foregoing reasons, we conclude that the trial court properly construed the term “borrower” to include an individual guarantor. Accordingly, we affirm the trial court’s grant of WPSC’s motion for final summary judgment as well as its denial of Byrd’s motion for final summary judgment.
AFFIRMED.
PALMER and TORPY, JJ., concur.

. §§ 494.001-.0077, Fla. Stat. (2009).

. Ch. 09-241, §§ 1-2, at 2373-74, Laws of Fla.