SCHIFF, LOUIS H., Associate Judge.
On occasion, the Legislature provides explicit guidance as to its intent and how a statute is to be applied for a specific case. This is one such instance. We reverse the declaratory judgment in favor of the appel-lees, which interpreted a 2012 amendment to section 163.3167(8), Florida Statutes, as requiring the City of Boca Raton to submit a development order to public referenda. Read properly, the 2012 amendment served to reaffirm the longstanding prohibition on referenda for development orders while grandfathering in specific charter provisions permitting referenda in place as of June 1, 2011.

Factual Background

In February 2012, the City of Boca Raton adopted Ordinance 5203, which amended a previously-approved development order by, among other things, setting additional development approval requirements for a four-acre parcel of land owned by appellant Archstone. Although Ordinance 5203 was styled as an amendment, the parties stipulated that it was a “local government development order.”
One month after the ordinance’s passage, the appellees, a group of Boca Raton residents, collectively filed a petition, pursuant to Section 6.02 of the City’s charter, seeking a citywide referendum to determine whether Ordinance 5203 should be repealed. Although not specifically addressing development orders, Section 6.02[1] conferred upon the City’s residents a general power of referendum with regard to the passage of city ordinances, providing as follows:
The qualified voters of the city shall have the power by petition to require reconsideration by the council of any adopted ordinance or resolution, and if council fails to repeal an ordinance or resolution, to approve or reject it at a city election ....
At the time the appellees initiated their petition, section 163.3167(8), Florida Statutes (2011) (“the 2011 Amendment”), barred referendum proceedings for all development orders. As became effective on April 6, 2012, however, the Legislature amended section 163.3167(8) (the “2012 Amendment”) to permit local governments to “retain[ ] and implement^ ]” charter provisions that were in effect as of June 1, 2011, and provided “for an initiative or referendum process in regard to development orders.” § 163.3167(8), Fla. Stat. (2012) (emphasis added).
Unsure of the 2012 Amendment’s impact, the City brought suit in the circuit court seeking a declaratory judgment to the effect that development orders, such as Ordinance 5203, were not statutorily subject to referendum. One week later, Arch-stone, as the owner of the parcel subject to Ordinance 5203, intervened in the action as a co-plaintiff. Through their pleadings, the appellants collectively argued the City *350 was powerless to process the appellees’ referendum petition since the 2012 Amendment’s “grandfather” clause applied only to a charter’s “express” referendum provision, and “the City has never had a referendum process that specifically applied to development orders.”
Following cross-motions for summary judgment, the trial court entered an order denying the appellants’ motions while granting that of the appellees. In its order, the trial court found that, through the passage of the 2012 Amendment, “the Legislature intended for the referendum process to be permitted for Development Orders, where ... the City Charter provided for this prior to June, 2011.” Accordingly, since Section 6.02’s general provision “for the referendum process on any Ordinances” impliedly included development orders, the trial court reasoned “the 2012 Amendment supported] the referendum process in th[e instant] case.”
To support its ruling, the trial court traced section 163.3167(8)’s legislative history, recognizing the 2012 Amendment was enacted to grandfather in previously permitted charter provisions rendered invalid under the 2011 Amendment’s blanket prohibition. Nevertheless, the trial court interpreted the statute’s inclusion of the phrase “development orders” to evidence the Legislature’s intent to expand the referendum process to all general charter provisions, such as Section 6.02, which inferentially, although not directly, apply to development orders. Additionally, given this expansive view, the trial court interpreted the 2012 Amendment as overruling this Court’s decision in Preserve Palm Beach Political Action Committee v. Town of Palm Beach, 50 So.3d 1176 (Fla. 4th DCA 2010), which questioned the efficacy of subjecting development orders to referendum.
The appellants challenge the trial court’s interpretation as contrary to the Legislature’s intent. Specifically, they argue the 2012 Amendment did nothing to disturb the previous bar on referendum for development orders, since its express purpose was to satisfy a contingent settlement agreement by grandfathering in a municipality’s limited charter provision. As an issue of statutory interpretation, our review is de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006), cert. denied, 549 U.S. 1216, 127 S.Ct. 1268, 167 L.Ed.2d 92 (2007).
“Referendum is the right of the people to have an act passed by the legislative body submitted for their approval or rejection.” City of Coral Gables v. Carmichael, 256 So.2d 404, 411 (Fla. 3d DCA 1972) (quotation marks and citation omitted). In Florida, the availability of the referendum is constrained to those situations where “the people through their legislative bodies decide it should be used.” Fla. Land Co. v. City of Winter Springs, 427 So.2d 170, 172-73 (Fla.1983) (footnote omitted). In this regard, Article VI, section 5(a) of the Florida Constitution provides that “referenda shall be held as provided by law,” with the phrase “as provided by law” equating to “as passed ‘by an act of the legislature.’ ” Holzendorf v. Bell, 606 So.2d 645, 648 (Fla. 1st DCA 1992) (quoting Broward Cnty. v. Plantation Imports, Inc., 419 So.2d 1145, 1148 (Fla. 4th DCA 1982)); Grapeland Heights Civic Ass’n v. City of Miami, 267 So.2d 321, 324 (Fla.1972) (defining “law” as used in the Florida Constitution as “enacted] by the State Legislature”). Thus, as applied to this case, the appellees’ right to referendum is effectively tied to the reach of the 2012 Amendment.

Legislative History

“Legislative intent is the polestar that guides the interpretation and con *351 struction of a statute.” Anderson v. State, 87 So.3d 774, 777 (Fla.2012). “Where a statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent.” Beyel Bros. Crane & Rigging Co. of S. Fla., Inc. v. Ace Transp., Inc., 664 So.2d 62, 64 (Fla. 4th DCA 1995) (citing City of Miami Beach v. Galbut, 626 So.2d 192 (Fla.1993)). “However, when a statute is unclear or ambiguous as to its meaning, the Court must resort to traditional rules of statutory construction_” Murray v. Mariner Health, 994 So.2d 1051, 1061 (Fla.2008). In conducting such analysis, “courts are permitted to consider subsequently enacted legislation in determining the meaning of a statute,” Edward T. Byrd & Co. v. WPSC Venture I, 66 So.3d 979, 983 (Fla. 5th DCA 2011) (citing Martin Daytona Corp. v. Strickland Constr. Servs., 941 So.2d 1220, 1224 (Fla. 5th DCA 2006)), particularly where the “amendment was enacted soon after a controversy regarding the statute’s interpretation arose.” McKenzie Check Advance of Fla., LLC v. Betts, 928 So.2d 1204, 1210 (Fla.2006) (citing Lowry v. Parole & Prob. Comm’n, 473 So.2d 1248, 1250 (Fla.1985)).
To discern the Legislature’s intent in enacting the 2012 Amendment, first we must navigate the statute’s history. The limitations placed upon referenda for development orders originated in 1995, when the Legislature enacted section 163.3167(12), Florida Statutes (1995), which provided as follows:
An initiative or. referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.
Applying this statute, this Court decided Preserve Palm Beach Political Action Committee v. Town of Palm Beach, 50 So.3d 1176 (Fla. 4th DCA 2010), rev. denied, 63 So.3d 750 (Fla.2011). Preserve Palm Beach involved the determination as to whether a proposed charter amendment constituted a development order, and thus was statutorily barred from referendum. In finding section 163.3167(12) to apply, this Court noted “ ‘the due process problems associated with subjecting small property owners to public referendum votes when they would otherwise be entitled to a quasi[-]judicial hearing and review procedures.’” Id. at 1179. Furthermore, we questioned the wisdom of subjecting a development order to referendum, stating:
The right of the people to vote on issues they are entitled to vote on is one of utmost importance in our democratic system of government. But there are issues — such as the right of a small landowner to use his property subject only to government regulations — which should not be determined by popular vote. Section 163.3167(12) rightfully protects the small landowner from having to submit her development plans to the general public and ensures that those plans will be approved or not, instead, by the elected officials of the municipality in a quasi-judicial process.

Id.

Less than a year after Preserve Palm Beach, the Legislature enacted the 2011 Amendment, which served to bar referen-da for all development orders, comprehensive amendments, and map amendments. See § 163.3167(8), Fla. Stat. (2011). Besides simply placing a limitation on referenda power, however, the 2011 Amendment also had the residual effect of invalidating the in-place charter provisions promulgated by several Florida *352 municipalities, not including Boca Raton,[2] which tracked the 1995 statute’s limited permission of referenda.
The Town of Yankeetown’s charter, for example, contained the following provision, which specifically permitted referenda for comprehensive plans affecting more than five parcels of land:
Section 11. Voter approval is required for approval of comprehensive land use plan or comprehensive land use plan amendments affecting more than five parcels except for amendments to the Capital Improvements Element of the Comprehensive Plan, including annual updates to the capital improvement schedule shall not require voter approval.
To combat their provision’s invalidation, the Town of Yankeetown filed a complaint in the Leon County circuit court seeking a declaratory judgment which would maintain its right to enforce Section 11, notwithstanding the 2011 Amendment’s prohibition. See Town of Yankeetown, FL v. Dep’t of Cmty. Affairs, et al., Case No. 37 2011 CA 002036 (Fla.2d Cir.Ct.2011).
To resolve the matter, Yankeetown and the Department of Community Affairs reached a proposed settlement contingent upon the Legislature amending section 163.3167(8) to “grandfather-in those charter provisions, such as Yankeetown’s, in place on the effective date of the Act that specifically provided for an initiative or referendum process relating to approval of any development order or any comprehensive plan or map amendment.” Fla. H.R. Comm, on Econ. Affairs, Subcomm. on Community & Military Affairs, and Workman, HB 7081 (2012), Staff Analysis 4 (Apr. 9, 2012) (emphasis added). From this settlement, the 2012 Amendment was enacted, providing in full as follows:
An initiative and referendum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment is prohibited. However, any local government charter provision that was in effect as of June 1, 2011, for an initiative or referendum process in regard to development orders or in regard to local comprehensive plan amendments or map amendments may be retained and implemented.
§ 163.3167(8), Fla. Stat. (2012).
Drawing from the statute’s history, the Legislature intended to enforce the 2011 Amendment’s impediment on the referendum process while exempting specific charter provisions permitting referendum, such as Yankeetown’s Section 11, in place as of June 2011. Without express wording to the contrary, we decline to infer that the Legislature intended to radically expand the referendum process through general charter provisions, where such provisions are commonplace throughout our state. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (“[Cjourts must presume that a legislature says in a statute what it means and means in a statute what it says there.”).

2013 Amendment and the Intent of the Legislature

Such interpretation is cemented by a 2013 amendment to section 163.3167(8), which provided as follows:
(8) (a) An initiative or referendum process in regard to any development order is prohibited.
*353 (b) An initiative or referendum process in regard to any local comprehensive plan amendment or map amendment is prohibited. However, an initiative or referendum process in regard to any local comprehensive plan amendment or map amendment that affects more than five parcels of land is allowed if it is expressly authorized by specific language in a local government charter that was lawful and in effect on June 1, 2011. A general local government charter -provision for an initiative or referendum process is not sufficient.
(c) It is the intent of the Legislature that initiative and referendum he prohibited in regard to any development order.... Therefore, the prohibition on initiative and referendum stated in paragraphs (a) and (b) is remedial in nature and applies retroactively to any initiative or referendum process commenced after June 1, 2011, and any such initiative or referendum process that has been commenced or completed thereafter is hereby deemed null and void and of no legal force and effect.
§ 163.3167(8)(a)-(c), Fla. Stat. (2013) (emphasis added). As grounds for this amendment, the committee staff made express reference to the instant case in its accompanying May 14, 2013 staff analysis, stating:
In October 2012, the Palm Beach County Circuit Court ruled that CS/HB 7081 (2012) extended the exception to all local government general referendum or initiative charter provisions in effect as of June 1, 2011. The court held that such a general provision encompassed specific land amendments, such as development orders and comprehensive map amendments, despite the charter language not specifically authorizing either. This broad interpretation is contrary to the intent of the 2011 and 2012 legislation, which sought to restrict these voting mechanisms.
Fla. H.R. Comm, on Econ. Affairs, Sub-comm. on Economic Development & Tourism, and Trujillo, Perry, HB 7019 (2013), Staff Analysis 4-5 (May 14, 2013) (footnote omitted) (emphasis added).
“While we recognize that staff anal-yses are not determinative of final legislative intent, they are, nevertheless, ‘one touchstone of the collective legislative will.’ ” White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (quoting Sun Bank/S. Fla., N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994)). Here, the above-mentioned staff analysis, when taken in conjunction with the changes made to section 163.3167(8), clearly expresses the Legislature’s intent to bar referendum for development orders unless exempted by specific authorization that existed before June 1, 2011. Accordingly, we reverse the declaratory judgment with instructions for the trial court to enter a declaratory judgment in accordance with this opinion.

Reversed and remanded.

MAY and CIKLIN, JJ„ concur.

. Read in conjunction, Section 6.04 of the City’s Charter provides the means of commencing such proceedings, providing as follows:
Any five (5) qualified voters may commence initiative or referendum proceedings by filing with the city clerk an affidavit stating that they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in the proper form, representing the petitioners in any subsequent formal proceedings, and withdrawing a submitted petition.

. As of 2011, the local governments containing a specific referendum or initiative process affected by the 2011 Amendment included Yankeetown, Longboat Key, Key West, and Miami Beach. Fla. H.R. Comm. on Econ. Affairs, Subcomm. on Community & Military Affairs, and Workman, HB 7081 (2012,) Staff Analysis 3 n. 2 (Apr. 9, 2012).