POLEN, J.
 

 Appellants, Preserve Palm Beach Political Action Committee and Patrick Henry
 
 *1177
 
 Flynn (collectively “Preserve”), appeal the trial court’s order granting appellee, Town of Palm Beach’s, motion for summary judgment and denying appellants’ cross-motion for summary judgment.
 

 In the underlying action, the Town filed a Complaint for Expedited Declaratory Relief seeking a determination of the constitutionality of a Charter amendment proposed by Preserve. The proposed amendment, to be voted on by the citizens of the Town in a February 2010 election, would have required that the Town of Palm Beach Charter be amended to incorporate portions of a 1979 Agreement between the Town of Palm Beach and a developer. The incorporated provisions would prohibit the construction of new buildings in Royal Poinciana Plaza and would require that the Poinciana Theater be used only as a theater of the performing arts and/or visual arts or for lectures or other special events.
 

 The complaint pled two counts of declaratory relief. Count I sought a determination of the constitutionality of the proposed amendment based on whether the amendment conflicted with section 163.3167(12), Florida Statutes, by purporting to use the initiative or referendum process to alter a development order. Count II sought a determination of the constitutionality of the proposed amendment based on whether the amendment was clear and unambiguous as required by section 101.161(1), Florida Statutes.
 

 The parties agreed below that there were no genuine issues of material fact. The trial court was simply asked to determine two issues: (1) whether the 1979 Agreement was a development order, and (2) whether the proposed amendment was unconstitutional on its face.
 

 The 1979 Agreement
 

 The 1979 Agreement between the Town and Poinciana Properties, Ltd. (the developer), was executed in order to satisfy a precondition to the Town’s granting of a variance to the developer. At a hearing on the developer’s motion for variance, the Town Council granted the motion “subject to [execution of] an agreement, in a form satisfactory to the Town Attorney,” which would provide for sixteen specific conditions. A town building official subsequently advised the developer that the building permit would only issue after certain procedures had been followed:
 

 After the town has approved said agreement, and after it has been recorded by the applicant, with original copy returned to the Town for the permanent record, and after the Town has received revised plans for approval which reflect the conditions of the agreement, then the Town Building permit to authorize commencement of construction may subsequently be issued.
 

 The resulting Agreement provided, in part:
 

 WHEREAS, Partnership made an application for variance No. 39-78 with respect to the property known as the Royal Poinciana Plaza on Cocoanut Row in the Town of Palm Beach ...; and
 

 WHEREAS, after public notice and a public hearing on the Partnership application, the Town Council of Palm Beach granted said variance No. 39-78 with modifications of the original plan at its meeting on February 13, 1979 subject to the following conditions; and
 

 WHEREAS, Partnership suggested and volunteered some of said conditions and by this agreement does hereby covenant and agree with TOWN that the conditions hereinafter set forth have become binding obligations on the part of Partnership, and upon its successors and assigns.
 

 NOW, THEREFORE, know all men by these present that in consideration of the premises hereinbefore set forth and
 
 *1178
 
 for other good and valuable considerations, the parties do hereby agree as follows:
 

 [[Image here]]
 

 2. Subsequent to the completion of construction and during its ownership of the Royal Poinciana Plaza, the Partnership (and during the ownership of any purchaser) agrees to perform as follows:
 

 [[Image here]]
 

 E. It will continue to lease the space now occupied and used by the “Poinciana Theater” only for use as a theater of the performing and/or visual arts and for lectures or other special events.
 

 Proposed Charter Amendment
 

 Prompted by the threat of demolition of the theater, Preserve sponsored the following ballot title, summary, and charter amendment petition in an effort to incorporate portions of the 1979 Agreement into the Town Charter:
 

 BALLOT TITLE: Alterations of covenants of Royal Poinciana Plaza and Royal Poinciana Playhouse only by Referendum.
 

 BALLOT SUMMARY: Voter approval required for alterations to the covenants set forth in the 1979 Royal Poinciana Plaza Agreement between the Town of Palm Beach and the predecessor of Poinciana Properties, Limited, concerning property known as the Royal Poinciana Plaza.
 

 TEXT OF THE PROPOSED CHARTER AMENDMENT
 

 (1) The Town of Palm Beach Charter [s]hall be amended to incorporate portions of the covenants set forth in the 1979 Agreement between the Town of Palm Beach and the predecessor of Poinciana Properties, Limited concerning property known as the Royal Poinciana Plaza; which do not allow the construction of new buildings in Poinciana Plaza, and require that the Poinciana Theater only be used as a theater of the performing arts and/or visual arts or fox-lectures or other special events.
 

 (2) That a majority of Voters of the Town of Palm Beach voting in a referendum must approve any alterations to the Royal Poinciana Plaza Agreement.
 

 After Presex-ve collected the x-equix-ed number of signatures, and the Town was told to put the proposed amendment on the ballot, the Town sought a declaratory judgment as to the constitutionality of the amendment. Following a hearing on the parties’ motion and cross-motion for summary judgment, the ti-ial court determined that the 1979 Agreement was a development order. Accordingly, the court granted the Town of Palm Beach’s motion for summary judgment finding that the proposed amendment was facially unconstitutional because it conflicted with section 163.3167(12). The coui't then determined that the issue of whether the proposed amendment was unconstitutionally vague was moot. Presei-ve now timely appeals.
 

 We agree with the trial court’s order and affirm. Section 163.3167(12), Floi-ida Statutes, provides in part:
 

 An initiative or x-efei-endum process in regard to any development order or in regard to any local comprehensive plan amendment or map amendment that affects five or fewer parcels of land is prohibited.
 

 § 163.3167(12), Fla. Stat. (2009).
 
 [1]
 
 “Development order” is defined as “any order granting, denying, or granting with conditions an application for a development permit.” § 163.3164(7), Fla. Stat. (2009).
 

 
 *1179
 
 Preserve primarily argues that the Agreement is a “development agreement” and is not a “development order.” In support of its argument, Preserve first contends that the 1979 Agreement is plainly not an order, which is commonly defined as a “command, direction, or instruction.”
 
 [2]
 
 The Town of Palm Beach responds that the 1979 Agreement meets the definition of “development order” provided in section 163.3164(7) because only by the 1979 Agreement did the Town officially grant, with conditions, the developer’s variance request.
 

 As the trial court noted, there is no controlling authority defining a “development order” under the circumstances present here. However, a “development agreement” has been defined as “a contract between a [local government] and a property owner/developer, which provides the developer with vested rights by freezing the existing zoning regulations applicable to a property in exchange for public benefits.”
 
 Morgran Co. v. Orange County,
 
 818 So.2d 640, 643 (Fla. 5th DCA 2002) (quoting Brad K. Schwartz,
 
 Development Agreements: Contracting for Vested Rights,
 
 28 B.C. Envtl. Aff. L.Rev. 719 (Summer 2001)). The 1979 Agreement at issue did not freeze the zoning as to the developer but granted a variance from zoning with specific conditions. The official act of the Town which allowed the development was the execution of the 1979 Agreement, and not the pronouncement of approval during the town meeting.
 

 Much of Preserve’s argument is based on the common understanding that an order, by definition, is often unilateral and non-negotiable. However, we note that development orders are often the product of negotiations between a developer and a municipality. Joseph Van Rooy,
 
 The Development of Regional Impact in Florida’s Growth Management,
 
 19 J. Land Use & Envtl. L. 255, 256 (Spring 2004).
 

 The legislative history of section 163.3167(12) does not provide any guidance as to the purpose of the statute. Still, as the trial court recognized, “[I]t is not difficult to see the due process problems associated with subjecting small property owners to public referendum votes when they would otherwise be entitled to a quasi[-]judicial hearing and review procedures.” The proposed amendment attempts to subject the landowner of the property at issue to the referendum process every time the landowner wishes to do something not anticipated in the 1979 Agreement. In other words, this amendment seeks to do the very thing prohibited by section 163.3167(12). The trial court was correct in determining that the amendment conflicted with Florida law.
 

 The right of the people to vote on issues they are entitled to vote on is one of utmost importance in our democratic system of government. But there are issues — such as the right of a small landowner to use his property subject only to government regulations — which should not be determined by popular vote. Section 163.3167(12) rightfully protects the small landowner from having to submit her development plans to the general public and ensures that those plans will be approved or not, instead, by the elected officials of the municipality in a quasi-judicial process.
 

 Affirmed.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 . Neither party disputes that the subject property is comprised of fewer than five parcels.
 

 [2]
 

 . Citing Black's Law Dictionary (West’s 9th ed.) at 1206.