# Third District Court of Appeal

## State of Florida

Opinion filed September 20, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2090
Lower Tribunal No. 16-20844
_____

**Miami-Dade County Board of County Commissioners, et al.,**
Appellants,

vs.

**An Accountable Miami-Dade, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, William L. Thomas, Judge.

Abigail Price-Williams, Miami-Dade County Attorney, and Oren Rosenthal and Michael B. Valdes, Assistant County Attorneys, for appellants.

Greenspoon Marder and Joseph S. Geller (Fort Lauderdale); Ver Ploeg & Lumpkin and Andrew L. Gordon; Benedict P. Kuehne and Michael T. Davis, for appellees.

KYMP LLP and Juan-Carlos Planas, for Eric Zichella as Amicus Curiae.

Before SUAREZ, C.J., and LAGOA and EMAS, JJ.

LAGOA, J.

Appellants, Miami-Dade County Board of County Commissioners (the "Board" or "County Commission"), Carlos Gimenez, in his capacity as Miami-Dade County Mayor, and Christina White, in her capacity as Miami-Dade County Supervisor of Elections (collectively "Appellants"), appeal from the trial court's entry of a writ of mandamus compelling Miami-Dade County to place on the November 8, 2016 General Election ballot an initiative petition submitted by Appellees, An Accountable Miami-Dade, Christian Ulvert, Tresnise Bryant, Michelle Davis and Caroline Williams (collectively "Appellees"). For the reasons set forth below, we reverse and vacate the writ.

I.      FACTUAL AND PROCEDURAL HISTORY

a.      The County's Initiative Petition Process

In a September 10, 2002 election, the voters of Miami-Dade County approved an amendment to their County Charter concerning the initiatory petition process. In considering the issue, the voters were presented with the following ballot question:

County Question No. 9

Charter Amendment Placing Proposed Initiative Petitions on
Ballot Without Further County Commission Action

Shall the Charter be amended to provide that if an initiative petition **is deemed to be legally sufficient**, the proposal shall be placed on the ballot without requiring any further action by the Board of County Commissioners, unless the Board determines to adopt the proposal?

(emphasis added).

2

The 2002 amendment is presently codified in Section 8.01 of the Charter. Section 8.01, titled Initiative, Referendum, and Recall, provides in pertinent part as follows[1]:

> The electors of the county shall have the power to propose to the Board of County Commissioners passage or repeal of ordinances and to vote on the question if the Board refuses action, according to the following procedure:
>
> 1. The person proposing the exercise of this power shall submit the proposal, including proposed ballot language to the Clerk of the Circuit Court who shall without delay approve as to form a petition for circulation in one or several copies as the proposer may desire. A public hearing shall be held on the proposal at the next Board of County Commissioner meeting subsequent to the date the Clerk approves the petition as to form.
>
> 2. The person or persons circulating the petition shall, within 120 days of the approval of the form of the petition, obtain the valid signatures of voters in the county in numbers at least equal to four percent of the registered voters in the county on the day on which the petition is approved, according to the official records of the County Supervisor of Elections. In determining the sufficiency of the petition, no more than 25 percent of the valid signatures required shall come from voters registered in any single county commission district. Each signer of a petition shall place thereon, after his name, the date, and

[1] The County's process is somewhat analogous to the process governing citizen initiatives for proposed amendments to the Florida constitution. Under that process, the petition sponsor submits the initiative petition form to the Florida Division of Elections. § 100.371(2), Fla. Stat. (2016). The Division reviews the petition form for sufficiency of its format. Id. After the Division approves the petition form, the sponsor circulates the petition for signatures by registered Florida voters. Id. The petition is subsequently subject to signature verification by the various county supervisors of elections, §100.371(3), Fla. Stat., and review for legal sufficiency by the Florida Supreme Court. §§ 15.21, 16.061(1), Fla. Stat. (2016). The petition is placed on the statewide ballot, accompanied by the relevant financial impact statement, only after all of these requirements are met.

his place of residence or precinct number. Each person circulating a copy of the petition shall attach to it a sworn affidavit stating the number of signers and the fact that each signature was made in the presence of the circulator of the petition.

3.    The signed petition shall be filed with the Board which shall within 30 days order a canvass of the signatures thereon to determine the sufficiency of the signatures. If the number of signatures is insufficient or the petition is deficient as to form or compliance with this Section, the Board shall notify the person filing the petition that the petition is insufficient and has failed.

4.  The Board may within 30 days after the date a sufficient petition is presented adopt the ordinance as submitted in an initiatory petition or repeal the ordinance referred to by a referendary petition. If the Board does not adopt or repeal the ordinance as provided above, then the proposal shall be placed on the ballot without further action of the Board.

b.    The Current Petition Initiative

On April 26, 2016, An Accountable Miami-Dade, through Christian Ulvert, submitted an initiative petition, including proposed ballot language, to the Clerk of the Circuit Court. The petition contains the following ballot language:

**Title**: INITIATORY ORDINANCE PETITION, REVISING CAMPAIGN FINANCE CONTRIBUTION LIMITS AND TRUST FUND, AND BANNING CERTAIN CONTRACTOR CONTRIBUTIONS.

**Summary**: Should an ordinance be enacted addressing the appearance of ethical impropriety in county government; limiting campaign contributions to $250 per election per candidate to candidates for County offices; prohibiting large county contractors from making campaign contributions; amending the election campaign financing trust fund; repealing prior ordinances and resolutions in conflict;

4

amending definition of gift; providing severability, code inclusion, and an effective date?

Two days after the petition was submitted, the Clerk of the Circuit Court (the "Clerk") in a written letter dated April 28, 2016, notified Mr. Ulvert that "[t]he petition form complies with the format determined by the Supervisor Of Elections. Therefore, I have enclosed a copy of the approved petition form with the Clerk's seal affixed thereto." Significantly, the Clerk further notified Appellees "the Clerk approves the petition, **as to form only**. This approval as to form only does not address the substance of the petition, legal sufficiency of the proposed ordinance and/or factual accuracy of any statements herein." (emphasis in original). The Clerk further directed Appellees to review Sections 3.06[2] and 8.01 of the Miami-Dade Home Rule Amendment and Charter (the "Charter") as well as Section 12-23 of the Miami-Dade County Code and advised Appellees that "[i]t is the responsibility of the petitioner to comply with all applicable laws governing the initiative petition process." (emphasis in original)

After approval by the Clerk, and pursuant to Section 8.01(1) of the Charter, the subject petition was placed on the May 17, 2016 Board agenda for a public hearing.[3] It is undisputed that at the May 17, 2016 meeting, the Board did not

---

[2] Section 3.06 of the Charter incorporates "the provisions of the election laws of this state" into all Miami-Dade County elections held pursuant to the Charter.

[3] The record shows that although the next regular Board of County Commissioners meeting would have been on May 3, 2016, the item was scheduled on the May 17, 2016 meeting in order to comply with the publication requirements of Section

5

consider any motion on the petition and did not take any action with respect to the petition other than allowing Appellees and other members of the public to speak on the proposal.[4]

The Clerk's April 28, 2016 letter further informed Appellees that they had 120 days from April 28, 2016 to obtain the necessary signatures.[5] The uncontroverted evidence in the record establishes that the Miami-Dade County Elections Department informed Appellees "that ballot questions submitted by municipalities by August 9, 2016 in final form and with all the required legal approvals would be placed on the November General Election Ballot."[6]

On August 2, 2016, Appellees filed their signed petitions with the Clerk of the Board of County Commissioners. Pursuant to Section 8.01(3) of the Charter, once signed petitions are submitted, the Board then has 30 days[7] to "order a canvass of the signatures thereon to determine the sufficiency of the signatures."

The Board, however, cannot order a canvass unless done as an act in a duly authorized and constituted meeting.[8] A review of the Board's 2016 Calendar

---

1.02(B) of the Charter.

[4] This Court takes judicial notice of the video of the May 17, 2016 Board meeting (http://miamidade.gov/wps/portal/Main/webcasting).

[5] The 120-day period expired on August 26, 2016.

[6] The Supervisor of Elections, Christina White, submitted an affidavit attesting to this fact.

[7] Pursuant to Section 8.01(3), the Board the County Commission had until September 1, 2016 to order the canvass.

[8] See Nash v. Richard, 166 So. 2d 624, 625 (Fla. 3d DCA 1964).

shows that the regularly scheduled Board meeting of August 2, 2016 was cancelled because of the Board's July 25 through August 31, 2016 recess, and that the next regularly scheduled meeting following recess was to be held on September 7, 2016. On August 8, 2016, the Chairman of the Board circulated a call for a special meeting of the Board on August 9, 2016 to address the petition. The August 9, 2016 special meeting, however, lacked a quorum and was not able to be convened. On August 22, 2016, the Chairman successfully convened a special meeting for the purpose of addressing the subject petition.

At the August 22, 2016 special meeting, the Board ordered the Supervisor of Elections to canvass the submitted petitions on an expedited basis.[9] The record establishes that at the August 22, 2016 meeting, Appellees suggested that the Board defer consideration of the petition's legal sufficiency to a later point in time.[10]

On September 2, 2016, before the canvass was completed and before the Board considered or determined the petition's sufficiency, Appellees filed a First Amended Petition for Writ of Mandamus. In their petition, Appellees asked the trial court to compel Miami-Dade County "to order that the campaign finance

---

[9] The record indicates that over $400,000 in taxpayer funds were expended in expediting the canvass.

[10] The Court takes judicial notice of the video of the August 22, 2016 special Board meeting (http://miamidade.gov/wps/portal/Main/webcasting). A review of the video of the August 22, 2016 special meeting of the Board shows that counsel for Appellees also acknowledged that were legal questions about the sufficiency of the petition but that they could be considered at a later date.

7

reform initiative ordinance petition be placed on the November 8, 2016 ballot or adopt the proposed ordinance if the Supervisor of Elections determines that the petition contains a sufficient number of signatures pursuant to the Home Rule Amendment and the Miami-Dade County Home Rule Charter." On September 2, 2016, Appellees also filed a Motion to Expedite Consideration of Amended Petition for Writ of Mandamus.

On September 6, 2016, the trial court *sua sponte* requested that all parties appear for a hearing on September 8, 2016 at 10 a.m. The parties were expressly advised by the trial court's judicial assistant that the hearing would only be on the motion to expedite.[11] At no time prior to the September 8 hearing did the trial court issue an alternative writ in mandamus, provide notice that it would be considering the merits of the petition, or give the County the opportunity to show cause why such mandamus should not be granted.

Later on September 6, 2016, the Supervisor of Elections certified to the Board that the petition had been fully canvassed and contained 55,835 valid signatures and 72,189 invalid signatures. The Supervisor's certification was

[11] In an email to all the parties, the trial court's judicial assistant advised the parties that "[t]he judge will be hearing the Motion that was filed. The Court id [sic] also requesting the response by the end of today." In response, the attorney for the County made the following inquiry: "[t]o be clear, that is the motion to expedite? That is the only motion pending." In response, again to the all the parties, the trial court's judicial assistant responded "[c]orrect the motion to expedite."

subsequently added on to the agenda for the Board's meeting scheduled for the following day, September 7, 2016.

At the September 7 meeting, the Board discussed both the status of the canvass and also the sufficiency of the petition.[12] At that meeting, the Board determined that the petition was deficient as to form and that the petition had therefore failed.[13] The record establishes that this was the first time that the Board made any determination regarding the sufficiency of the petition. Within an hour of that vote, Miami-Dade County filed a Consolidated Motion to Dismiss and Response to Motion to Expedite in the trial court below.

On September 8, 2016, the trial court proceeded with the scheduled hearing on the motion to expedite. Rather than address the motion to expedite – which was the only pending motion and which the trial court itself had advised the parties was the subject of the hearing—the trial court immediately proceeded to entertain argument on the merits of the petition itself. Our review of the video of the hearing, with which Appellees supplemented the record, confirms that the trial court began the hearing questioning the County on the merits of the petition and

_____

[12] The Court takes judicial notice of the video of the September 7, 2016 Board meeting (http://miamidade.gov/wps/portal/Main/webcasting).

[13] See Section 8.01(3) ("If. . . the petition is deficient as to form or compliance with this Section, the Board shall notify the person filing the petition that the petition is insufficient and has failed."). Additionally, the County Attorney's Office advised the Board at the September 7, 2016 meeting that the ballot language was misleading, that the ballot title did not comply with the essential requirements of Florida law, and that the underlying ordinance was unconstitutional.

9

whether the initiative petition was sufficient. The Court at no time addressed the motion to expedite, which was the only matter it had noticed for hearing.

On Friday, September 9, 2016, the trial court issued an Order Granting Appellee's First Amended Petition for Writ of Mandamus. The trial court found that Mandamus was warranted "[b]ecause the initiative petition form was approved by the Clerk pursuant to section 8.01(1), and later approved by the Board of county commissioners [sic] on May 17, 2016, [and as such] the named officials consequently had a ministerial duty to either adopt the initiative petition or place it on November's ballot. The Boards [sic] action in ordering the canvass of the signatures under County Charter 8.01(3) is merely ministerial, as is placement on the ballot if the Board does not adopt the ordinance."

Following issuance of the written order, the County on the same day filed an emergency notice of appeal and a motion for expedited review. The County's motion correctly noted that, pursuant to Florida Rule of Appellate Procedure 9.310(b)(2), the County's Notice of Appeal automatically stayed the trial court's order. This Court granted the motion for expedited appeal.[14] On September 12, 2016, Appellees filed an Emergency Motion for Review and Vacation of Automatic Stay. This Court denied that motion on September 15, 2016.

---

[14] The initial brief was filed on Monday, September 12, 2016. The answer brief was filed on Tuesday, September 13, 2016 and the reply brief on Wednesday, September 14, 2016.

10

II.    ANALYSIS

a.    The Entry of a Mandamus is Warranted only to Compel a Public Official to Discharge a Ministerial Duty

"Mandamus is a recognized remedy to require a public official, who is clothed with the authority, to discharge his duty." Dante v. Ryan, 979 So. 2d 1122, 1123 (Fla. 3d DCA 2008) (quoting Alexander v. City of Coral Gables, 745 So. 2d 1004, 1005 (Fla. 3d DCA 1999)); see also Browning v. Young, 993 So. 2d 64, 65 (Fla. 1st DCA 2008) (stating that mandamus is a civil remedy to compel a public official to discharge a ministerial duty); Eichelberger v. Brueckheimer, 613 So. 2d 1372, 1373 (Fla. 2d DCA 1993) ("Mandamus is used to compel an official to perform lawful duties."). "For the issuance of a writ of mandamus, the petitioner must demonstrate a clear legal right to the performance of a ministerial duty by the respondent and that no other adequate remedy exists." Morse Diesel Int'l v. 2000 Island Boulevard, Inc., 698 So. 2d 309, 312 (Fla. 3d DCA 1997). "A duty or act is defined as ministerial when there is no room for the exercise of discretion, and the performance being required is directed by law." Shea v. Cochran, 680 So. 2d 628, 629 (Fla. 4th DCA 1996) (quoting Town of Manalapan v. Rechler, 674 So. 2d 789, 790 (Fla. 4th DCA 1996)).

Mandamus is available only to "enforce an established legal right . . . not to establish that right." Morse Diesel Int'l , 698 So. 2d at 312; accord Fla. League of Cities v. Smith, 607 So. 2d 397, 401 (Fla. 1992) ("Mandamus may not be used to

11

establish the existence of such a right, but only to enforce a right already clearly and certainly established in the law.").

Here, the trial court granted the Appellees' first amended petition for writ of mandamus based upon its conclusion that the Appellees had a clear legal right to place the proposed ordinance on the November 8, 2016 ballot. Specifically, the trial court concluded:

> Because the initiative petition form was approved by the Clerk pursuant to section 8.01(1), and later approved by the Board of county commissioners on May 17, 2016, the named officials consequently had a ministerial duty to either adopt the initiative petition or place it on November's ballot.

The relevant portion of Section 8.01 of the Charter provides:

> 3.  The signed petition shall be filed with the Board which shall within 30 days order a canvass of the signatures thereon to determine the sufficiency of the signatures. If the number of signatures is insufficient or the petition is deficient as to form or compliance with this Section, the Board shall notify the person filing the petition that the petition is insufficient and has failed.

> 4.  The Board may within 30 days after the date a sufficient petition is presented adopt the ordinance as submitted in an initiatory petition or repeal the ordinance referred to by a referendary petition. If the Board does not adopt or repeal the ordinance as provided above, then the proposal shall be placed on the ballot without further action of the Board.

As these provisions make clear, the Board's duty to either adopt the petition as an ordinance or place the proposal on the ballot only arises if "a sufficient

12

petition is presented." However, if the "petition is deficient as to form or compliance with this Section, the Board shall notify the person filing the petition that the petition is insufficient and has failed."

The trial court's conclusion, therefore, that "the named officials" had a ministerial duty to either adopt the initiative petition or place it on the November ballot was incorrect because it was based upon an erroneous finding—that the Board "approved" the initiative petition on May 17, 2016. There is no evidence in the record that the Board "approved" the petition at the May 17 meeting, or that the Board approved the petition at any time.

In fact, at the August 22 special set Board meeting, Appellees suggested that the Board defer consideration of the sufficiency of the petition to a later date. The first time the Board considered the petition's sufficiency was at its September 7, 2016 meeting. Contrary to the trial court's finding in its order, the Board did not approve the petition but instead determined that the petition was deficient and had failed.

The Appellees in their answer brief properly concede that the Board did not "approve the petition as to form" at its May 17 meeting. The Appellees, however, argue that "[w]hile that [finding of the court] is not accurate, there is nothing in the trial court's decision that suggests that the court in any way relied on that fact in reaching its decision." We find Appellees' argument without merit, as a review of

13

the trial court's order shows that the trial court's ruling was clearly based on this incorrect finding.

Section 8.01(4) of the Charter only applies to a "sufficient petition." The trial court's order is premised on the erroneous finding that the Board approved the petition at its May 17, 2016 meeting and that Section 8.01(4) therefore applied. To the contrary, pursuant to Section 8.01(3), the Board's determination at its September 7 meeting that the petition was deficient meant that the petition failed. The Board, therefore, was not required—nor was it even authorized—to take further action regarding the petition, whether by adopting it or by permitting it to be placed on the ballot.[15]

Because no ministerial duty existed for the Board to place the petition on the ballot "without further action," Appellees failed to establish a clear legal right to have the petition placed on the ballot. The trial court therefore erred in granting the amended petition for writ of mandamus and entering an order requiring the placement of this petition on the November 8, 2016 ballot. Accordingly, we reverse the trial court's order and vacate the writ of mandamus compelling Miami-Dade County to add the initiative petition submitted by Appellees to the November 8, 2016 General Election ballot.

---

[15] Appellees are not without a remedy if they believe the Board's determination was incorrect. For example, Appellees could file a separate suit for declaratory relief challenging that determination. We express no opinion regarding the merits of such a suit.

14

b.  Trial Court's Failure to Comply with Florida Rule of Civil Procedure 1.630

In addition to the reasons set forth above, and a separate basis for reversal, we find that the trial court failed to comply with the requirements of Florida Rule of Civil Procedure 1.630. Florida Rule of Civil Procedure 1.630 sets forth the procedure for a trial court's issuance of extraordinary writs, including a writ of mandamus. Pursuant to Rule 1.630(d)(2), "[i]f the complaint shows a prima facie case for relief, the court shall issue . . . an alternative writ in mandamus." An alternative writ in mandamus is essentially an order to show cause. See Gilliam v. State, 996 So. 2d 956, 958 (Fla. 2d DCA 2008) (stating that if a petition for writ of mandamus states a prima facie case for relief, the trial court must issue an alternative writ, "which 'is essentially an order to show cause why the requested relief should not be granted.'" (quoting Bostic v. State, 875 So. 2d 785, 786 (Fla. 2d DCA 2004))); Conner v. Mid-Fla. Growers, Inc., 541 So. 2d 1252, 1256 (Fla. 2d DCA 1989) ("Upon receipt of a facially sufficient petition for writ of mandamus, a court having jurisdiction to consider such a petition should first issue an alternative writ, which is essentially an order to show cause why the requested relief should not be granted."). "If the petition and answer to the alternative writ raise disputed factual issues, the trial court must resolve these issues upon evidence submitted by the parties." See Radford v. Brock, 914 So. 2d 1066, 1068 (Fla. 2d DCA 2005).

15

Additionally, Rule 1.630(e) provides that a defendant "shall respond to writ as provided in rule 1.140."[16] As such, a respondent must be given a reasonable time within which to file a return to the alternative writ. Conner, 541 So. 2d at 1256 ("The respondent has the right to plead to the alternative writ and will be prejudiced by the failure to allow a reasonable time within which to do so."); Southern Realty & Utils. Corp. v. State, 181 So. 2d 552, 554 (Fla. 3d DCA 1966) ("The law requires that a reasonable time be given to file a return to an alternative writ of mandamus . . . .").

In its September 9, 2016 order, the trial court acknowledged that "Florida Rule of Civil Procedure 1.630 provides that 'If the complaint shows a prima facie case for relief, the court shall issue . . . an alternative writ in mandamus.' Fla. R. Civ. P. 1.630(d)(2); see also Chandler v. City of Greenacres, 140 So. 3d 1080, 1083 (Fla. 4th DCA 2014). Once the alternative writ in mandamus is issued, the defendant shall respond to the writ as provided in Rule 1.140. Fla. R. Civ. P. 1.630(e)." Despite acknowledging the mandatory procedural requirements of Rule 1.630, the trial court failed to follow them, and rather than making a preliminary determination as to Appellees' prima facie case for relief and issuing an alternative

---

[16] Rule 1.140(a)(1), Fla. R. Civ. P., provides in pertinent part that: "[u]nless a different time is prescribed in a statute of Florida, a defendant shall serve an answer within 20 days after service of original process and the initial pleading on the defendant, or not later than the date fixed in a notice by publication."

16

writ in mandamus, the trial court simply proceeded to a decision on the merits of the petition.

In Conner v. Mid-Fla. Growers, Inc., 541 So. 2d 1252, 1256 (Fla. 2d DCA 1989), our sister court held that the trial court's failure to issue an alternative writ requiring the appellant, the Department of Agriculture and Consumer Services, to respond to the petition warranted reversal. In Conner, as in this case, "instead of issuing an alternative writ and requiring the department to respond to the growers' petition, the court proceeded directly to hear the merits of the petition and to rule forthwith." Id. at 1256. The appellees in Conner argued that despite the lack of strict compliance with Rule 1.630, "the procedure employed by the trial court was proper and fair" and that "[t]he function of the alternative writ . . . 'is simply to advise the recipient that the court has reviewed the petition and found it to state a preliminary basis for relief.'" Id. at 1256. The Second District Court of Appeal disagreed and, in reversing the trial court's writ of mandamus, stated: "[w]e hold only that once mandamus was contemplated . . . the rules of civil procedure require proper notice and an adequate opportunity to respond." Id. at 1257.

As in Conner, the trial court here failed to issue an alternative writ and failed to require the County to show cause why the writ should not be issued. Moreover, if disputed factual issues are raised by the petition and the answer to the petition, "the trial court must resolve these issues upon evidence submitted by the

17

parties." <u>Radford</u>, 914 So. 2d at 1068. Having failed to provide the County with the opportunity to answer the petition, the trial court also failed to determine if an evidentiary hearing was required. Accordingly, because the trial court failed to comply with Rule 1.630, the writ of mandamus is reversed on this ground as well. <u>See</u> <u>Conner</u>, 541 So. 2d at 1257; <u>Southern Realty & Utils., Corp.</u>, 181 So. 2d at 554 (finding reversible error where appellants not given a reasonable time in which to prepare its defenses to writ of mandamus and file its return).

      c.      <u>Trial Court's Violation of the County's Right to Due Process</u>

Finally, and in addition to the reasons set forth above, we find that reversal of the writ is required based on the trial court's violation of the County's due process rights. As discussed previously, the trial court's September 8 hearing was noticed only for Appellees' motion to expedite, and the record establishes that on the day of the hearing, the only response filed by the County was as to Appellees' motion to expedite.[17] A review of the video of the September 8 hearing shows that the trial court immediately entertained argument on the merits of the petition, and that the trial court began the hearing not by addressing the motion to expedite—the only matter which the court had set for hearing—but rather by questioning the County on the merits of the petition and whether the initiative petition was

---

[17] Although the County had filed a motion to dismiss the amended petition for mandamus late in the day on September 7, that motion was not set for hearing on September 8.

18

sufficient. Notwithstanding the lack of notice, the trial court granted relief on the merits of the Appellees' petition.

It is well established that "the granting of relief, which is not sought by the notice of hearing or which expands the scope of a hearing and decides matters not noticed for hearing, violates due process." Celebrity Cruises, Inc. v. Fernandes, 149 So. 3d 744, 750 (Fla. 3d DCA 2014) (quoting Connell v. Capital City Partners, LLC, 932 So. 2d 442, 444 (Fla. 3d DCA 2006)). Accord Mizrahi v. Mizrahi, 867 So. 2d 1211, 1213 (Fla. 3d DCA 2004) ("Due process protections prevent a trial court from deciding matters not noticed for hearing and not the subject of appropriate pleadings."); Epic Metals Corp. v. Samari Lake E. Condo. Ass'n, Inc., 547 So. 2d 198, 199 (Fla. 3d DCA 1989) ("A trial court violates a litigant's due process rights when it expands the scope of a hearing to address and determine matters not noticed for hearing.").

Because it is undisputed that the September 8 hearing went well beyond the scope of the matter that the trial court had noticed for hearing, we reverse the writ on this ground as well, as the trial court's actions in reaching the merits of the case violated the County's due process rights.

III. CONCLUSION

We reverse the trial court's order on three independent grounds. First, because the trial court's conclusion that the Appellees had a clear legal right to

19

compel the Board to place the proposed ordinance on the ballot was based upon the erroneous finding that the Board "approved" the initiative petition on May 17, 2016, we reverse the trial court's order granting the Appellees' first amended petition for writ of mandamus and vacate the writ of mandamus.

Second, the trial court failed to follow the procedural safeguards required by Rule 1.630 in failing to issue an alternative writ in mandamus, and we therefore reverse the trial court's order on that ground as well. Third, we reverse the trial court's order because by expanding the scope of the September 8 hearing to address and determine matters not noticed for hearing, specifically the merits of Appellees' amended petition for writ of mandamus, the trial court violated the County's due process rights.[18]

Accordingly, we reverse the trial court's September 9, 2016 order, and vacate the writ of mandamus.

This opinion shall take effect immediately, notwithstanding the filing of any motion for rehearing.

SUAREZ, J., concurs.

---

[18] Because we reverse on these grounds, we need not reach any other issues raised in Appellants' brief.

20

EMAS, J., specially concurring.

I concur in the result reached by the majority, but conclude that it is unnecessary to reach the analysis in parts II b. and II c., and those corresponding portions of part III. I join in the remainder of the majority opinion.