# Third District Court of Appeal

## State of Florida

Opinion filed March 21, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1144
Lower Tribunal No. 17-3330
_____

**Lynne Bloch Mullen, et al.,**
Appellants,

vs.

**Bal Harbour Village, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

KYMP LLP, and Juan-Carlos "J.C." Planas, for appellants.

Weiss Serota Helfman Cole & Bierman, P.L., and Edward G. Guedes, Matthew H. Mandel and John J. Quick, for appellees.

Before LOGUE, SCALES and LUCK, JJ.

SCALES, J.

Lynne Bloch Mullen, Beth Berkowitz and Good Government for Bal Harbour ("Plaintiffs") appeal the trial court's non-final order denying injunctive

relief against Bal Harbour Village and Dwight Danie, the Village Clerk. We affirm because the trial court did not reversibly err in denying the requested injunction.[1]

**I. Relevant Facts and Procedural Background**

A. *Plaintiffs submit petitions to the Village*

As part of Plaintiffs' effort to secure passage of two amendments to the Village Charter, pursuant to section 166.031 of the Florida Statutes,[2] Plaintiffs gathered and submitted to the Village Clerk signatures in support of two petitions to amend the Village Charter. One petition sought to amend section 81 of the Village Charter to require a vote of at least sixty percent of Village electors to approve the sale, lease or disposal of real property owned by the Village ("Petition 81").[3] The second petition sought to add a new section 82 to the Village Charter to

---

[1] As elaborated upon more fully in Section II, *infra*, the order on appeal denied a motion styled as Plaintiffs' Motion for Declaratory Relief, Permanent Injunction and Mandamus With Incorporated Memorandum of Law; our review is of the trial court's denial of the requested injunction.

[2] Section 166.031(1) provides, in relevant part, as follows:

> [E]lectors of a municipality may, by petition signed by 10 percent of the registered electors as of the last preceding municipal general election, submit to the electors of said municipality a proposed amendment to its charter . . . . [T]he governing body of the municipality shall place the proposed amendment contained in the . . . petition to a vote of the electors at the next general election held within the municipality or at a special election called for such purpose.

§ 166.031(1), Fla. Stat. (2017).

2

require a vote of at least sixty percent of Village electors to approve certain, defined commercial development within the Village ("Petition 82").

### B. *The Village provides erroneous instructions to the Supervisor*

The Village Clerk received Petition 81 and Petition 82, including the elector signatures in support of them, on November 16, 2016, and forwarded them on December 23, 2016, to the Miami-Dade County Supervisor of Elections ("Supervisor") for signature verification. In a subsequent letter to the Supervisor, the Village Clerk provided the Supervisor with the Village Charter's requirements for petition drives, adding a "requirement" for petition drives to amend the Village Charter – not contained in either section 166.031, the Village Charter or the Village Code – that all petitions must be accompanied by affidavits of the petition circulators ("circulator affidavit"). The Village Clerk premised such a "requirement" in his letter to the Supervisor on "long-standing custom and practice."

The Village Clerk's advice regarding the circulator affidavit also appears to be influenced by his surface examination of Petition 81 and Petition 82. After receiving these petitions, which Plaintiffs had submitted as one package under one cover letter, the Village Clerk noticed several irregularities within them: (i) the cover letter identified a different number of signatures from the number on each of

---

[3] The Village Charter requires a simple majority vote.

3

the two petitions; (ii) both Petition 81 and Petition 82 had more than one format, in that individual petition pages contained a single line for signature or multiple signature lines; (iii) there was a slight variation in language among the Petition 82 petition pages; and (iv) certain people signed petitions more than once.

C. *The Supervisor deems the petitions insufficient and Plaintiffs file suit*

Ultimately, the Supervisor deemed the petitions insufficient because the circulator affidavits were missing. The Supervisor did not thereafter proceed to verify the sufficiency of the signatures or further process the petitions for inclusion on an election ballot. After learning that their petitions were deemed insufficient, Plaintiffs, on February 13, 2017, filed a two-count complaint against the Village and the Village Clerk (collectively, "Defendants") alleging entitlement to both declaratory and mandamus relief. Plaintiffs' complaint contained a single "WHEREFORE" clause seeking, *inter alia*, a declaration that their petitions "met the requirements of the Florida Statutes regarding petitions for Charter Amendments within municipalities" and an order requiring the Village to submit the petitions to the Supervisor for verification without any "interference" by the Village. Importantly, Paragraph 10 of Plaintiffs' complaint alleged that:

> As of the general election on November 8, 2016, there were 1,732 registered voters in Bal Harbour Village. Accordingly, the requisite number of petitions that needed to be verified in order to place a referendum in the next election was 174.

4

D. *Defendants move to dismiss Plaintiffs' complaint asserting illegality of Petition 82*

Defendants moved to dismiss Plaintiffs' complaint. In their motion to dismiss, however, Defendants did not mention, much less defend, the Village Clerk's "requirement" that a circulator affidavit must accompany petition signatures. Rather, Defendants argued in their dismissal motion that Plaintiffs are not entitled to mandamus relief because they have no clear legal right to the requested remedy; and that Plaintiffs are not entitled to declaratory relief because Plaintiffs' ultimate desire – to amend the Village Charter to require voter approval for development orders – already has been "declared" illegal by the Florida Legislature. Specifically, in their motion to dismiss, Defendants contended, for the first time, that Petition 82 purported to amend the Village charter *illegally*,[4] and that the Village could not be compelled to forward to the Supervisor signatures for verification in support of an illegal initiative. The trial court denied Defendants' motion to dismiss and ordered that Defendants answer Plaintiffs' complaint.

E. *Plaintiffs file Motion for relief*

Prior to Defendants answering Plaintiffs' complaint, Plaintiffs, presumably to obtain expeditious relief, filed a Motion for Declaratory Relief, Permanent Injunction and Mandamus With Incorporated Memorandum of Law ("Motion"). In

[4] The Village asserted that Petition 82 violates section 163.3167(8)(a) of the Florida Statutes. We address this issue in Section III. *B*., *infra*.

5

this Motion, Plaintiffs essentially argued that, after receiving a sufficient number of petitions to amend a municipal charter under section 166.031, a municipality has *a ministerial duty* to forward the collected signatures to the Supervisor for verification, unless a municipal charter or code provision affirmatively requires otherwise. Plaintiffs argued that, because nothing in section 166.031, the Village Charter or Village Code required a circulator affidavit as a condition for amending the Village Charter, Plaintiffs were entitled to a writ of mandamus compelling Defendants to forward the signatures to the Supervisor for verification.

To the extent that the Village's duty to forward the petition signatures to the Supervisor is not purely ministerial, Plaintiffs' Motion alternately sought declaratory and injunctive relief. Specifically, as an alternative to mandamus relief, Plaintiffs sought both (i) a declaration from the trial court that no provision of the Village's code or charter required the circulator affidavit, and (ii) an ensuing injunction requiring the Village to forward the signatures for both petitions to the Supervisor for validation. Plaintiffs' Motion did not mention, much less argue against, the alleged illegality of Petition 82 earlier raised in Defendants' motion to dismiss.

   F. *Defendants file their answer, affirmative defenses and response to Motion*

   Four days after the filing of Plaintiffs' Motion, Defendants filed their answer and affirmative defenses to Plaintiffs' complaint. In their answer

6

Defendants *admitted* the first sentence of the complaint's Paragraph 10 (that as of the November 8, 2016 general election, there were 1,732 registered voters in the Village), while denying the other material allegations of Plaintiffs' complaint. As an affirmative defense, Defendants once again alleged, as an absolute bar to Plaintiffs' requested relief, that Petition 82 was illegal.

Defendants also filed a response to Plaintiffs' Motion that contained much of the same argument contained in Defendants' prior motion to dismiss. Simply put, Defendants argued that Petition 82's illegality prevents Plaintiffs from prevailing on either a mandamus or a declaratory relief claim.

### G. *Trial court conducts hearing on Plaintiffs' Motion*

On May 3, 2017, the trial court conducted a hearing on Plaintiffs' Motion. While Plaintiffs' Motion is not captioned as a summary judgment motion, the parties and the trial court treated the Motion, and the May 3rd hearing, as such. Indeed, at the hearing Plaintiffs presented no witnesses and moved no documents into evidence; rather, Plaintiffs relied upon the Village's admissions and the Village Clerk's interrogatory responses that were in the trial court's record.[5] In his interrogatory answers, the Village Clerk admitted that Plaintiffs had submitted 250 signatures in support of Petition 81, and 241 signatures in support of Petition 82 (noting a discrepancy between his count and the numbers represented in Plaintiffs'

---

[5] See Florida Rule of Civil Procedure 1.510(c).

cover letter). Defendants admitted in their answer that the total number of registered Village voters was 1,732. Plaintiffs thus argued that, because Plaintiffs had submitted to the Village the requisite number of signatures (representing more than ten percent of Village's registered voters), Plaintiffs were entitled to mandamus and mandatory injunctive relief because the Village had a ministerial duty to forward the signatures to the Supervisor for verification.

Defendants countered that, because Petition 82 was illegal, Defendants could not be compelled to forward to the Supervisor signatures in support of that petition. Plaintiffs argued that any alleged illegality could be addressed by the Village after the Village had forwarded the signatures to the Supervisor. At no point did Plaintiffs seek an order requiring the Village to forward to the Supervisor the signatures supporting only Petition 81, for which no illegality was claimed.

### H. *Trial court enters order on appeal denying Plaintiffs' Motion*

Two days after the May 3rd hearing, the trial court entered the order on appeal, denying Defendants' Motion. The order expressly states that the trial court treated Defendants' Motion as a summary judgment motion, and then denied the Motion on two distinct grounds. First, the trial court found that Plaintiffs were precluded from obtaining the requested relief because the record lacked sufficient evidence "that the Petitions contain the required 10% of the Village's voters (as required by section 166.031)." Second, the trial court held that Plaintiffs could not

8

prevail because Petition 82 violated section 163.3167(8)(a), which expressly prohibits a municipality from engaging in an initiative or referendum process regarding a development order. The trial court reasoned that, because the Village Charter could not be lawfully amended to effectuate Petition 82, Plaintiffs did not have a clear legal right to an order requiring the Village to forward to the Supervisor the signatures supporting Petition 82. This appeal ensued.

## II. Jurisdiction

As mentioned earlier, the parties characterized Plaintiffs' Motion, and conducted the proceedings on the Motion, as if the Motion were a summary judgment motion. Generally, we lack appellate jurisdiction to review an order denying a party's summary judgment motion. Miami-Dade Cty. v. Perez, 988 So. 2d 40, 41 (Fla. 3d DCA 2008). Presumably, though, because Plaintiffs' Motion essentially sought the exact same relief as Plaintiffs' complaint, and the order denying the Motion denied such relief, the parties and the trial court, as well as Plaintiffs' notice of appeal, characterized the order on appeal as a "final order." Yet, notwithstanding the trial court's careful and thorough explanation of its rationale, the order simply denies Plaintiffs' Motion. The order does not contain any language purporting otherwise to dispose of, or end all further judicial labor in, Plaintiffs' case. The order therefore is not a final order reviewable under Florida Rule of Appellate Procedure 9.030(b)(1)(A). Ball v. Genesis Outsourcing Sols.,

LLC, 174 So. 3d 498, 499 (Fla. 3d DCA 2015). While it may be unclear exactly what further judicial labor may be required to bring finality to this case,[6] it is clear that the order does deny Plaintiffs' request for injunctive relief. We therefore review the order as an appealable, non-final order under Florida Rule of Appellate Procedure 9.130(a)(3)(B).

**III. Analysis**

The order on appeal provides two distinct bases for denying Plaintiffs' Motion: (1) the record evidence is insufficient to warrant relief to Plaintiffs; and (2) the illegality of Petition 82 is fatal to Plaintiffs' requested relief. Alas, if we were able to affirm on the first basis, this opinion would be brief and succinct because we would not need to reach the more complicated second issue. But because the record evidence before the trial court, along with the Village's admissions and concession, establish that Plaintiffs submitted enough signatures to trigger the Supervisor verification process, we are unable to affirm on this basis; and thus, the bulk of this opinion's analysis discusses the illegality of Petition 82 and issues that radiate from such illegality.

A. *Sufficiency of the "summary judgment" evidence*[7]

---

[6] We express no opinion as to what further judicial labor may be required to bring finality to this case.

[7] Because the parties and the trial court treated Plaintiffs' Motion as if it were a summary judgment motion, we review *de novo* the trial court's determination that the record evidence was insufficient to warrant relief. See Haber v. Deutsche Bank

10

As a threshold matter, for Plaintiffs to be entitled to any relief, it was incumbent upon them to establish with record evidence that they had acquired signatures from the requisite ten percent of the Village's registered voters. The trial court denied Plaintiffs' claims, concluding that "Plaintiffs have not submitted any affidavits or sworn testimony in support of their Motion that the Petitions contain the required 10% of the Village's voters (as required by section 166.031 Florida Statutes)." Our *de novo* review of the record, however, and the Village's own concession below, belie this conclusion.

In relevant part, Florida Rule of Civil Procedure 1.510(c) requires the trial court to enter summary judgment for the moving party if "the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact . . . ." Our review of the record confirms that Plaintiffs had submitted to the Village Clerk the requisite number of signatures to invoke section 166.031's municipal charter amendment process. The Village admitted in its pleadings that, as of the November 8, 2016 general election, there were a total of 1,732 registered voters in the Village.[8] In his sworn interrogatory responses, the Village Clerk asserted that Plaintiffs had submitted 250 signatures in support of Petition 81 and 241 signatures in support of Petition 82. Plaintiffs were not required by Florida's

Nat'l Trust Co., 81 So. 3d 565, 566 (Fla. 4th DCA 2012).

[8] Once an issue is admitted by a party in its pleadings, it is unnecessary for the party to present further proof of that issue at a subsequent hearing. Fernandez v. Fernandez, 648 So. 2d 712, 713 (Fla. 1995).

summary judgment standards to present extrinsic evidence from a mathematician to establish that a rounded ten percent of 1,732 is 174, and that both 250 and 241 are numbers greater than 174. This evidence was uncontested. Additionally, in its response to Plaintiffs' Motion, the Village conceded below that, if Plaintiffs agreed to *separate* Petitions 81 and 82 and "treat them individually, [the Village] agree[s] that the Section 81 Petition can be properly forwarded to the [Supervisor] for . . . its potential placement on the ballot. If Plaintiffs continue to insist that the Petitions be treated together, then they both fail of a result of the illegality of [Petition] 82 . . . ." In light of the entire record, we read this as a concession by the Village that the signatures obtained by Plaintiffs were sufficient to warrant the forwarding of same to the Supervisor for verification. Thus, because the record, coupled with the Village's concession, reflects that Plaintiffs met their initial burden to establish they had acquired the requisite number of signatures to invoke section 166.031, we are unable to affirm the trial court's order on this basis.[9] Our analysis necessarily now shifts to the other basis for the trial court's order.

 B. *The illegality of Petition 82*[10]

_____

[9] Our conclusion in this regard is based on the summary judgment evidence and concession developed in this case, and should not be characterized or construed as holding that a municipality has a legal duty to forward signatures for verification so long as the mathematical ten percent threshold is met. Similar to our discussion in section III. *C.*, *infra*, we need not, and therefore do not, reach the issue as to what may trigger a municipality's legal duty under section 166.031 to forward obtained signatures to the supervisor of elections for verification.

Village residents were presented with the following language in proposed Petition 82:

> Any proposed development plan for an existing commercial property that increases the existing commercial space by more than thirty (30) percent of the current amount of retail space, must be submitted for approval to the electors in Bal Harbour Village and approved by a vote of at least sixty (60) percent of the Village electors voting on such referendum.

Petition 82 is directed to applicants for development orders from the Village. "[A] 'development order' means any order granting, denying, or granting with conditions an application for a development permit." § 163.3164(15), Fla. Stat. (2017). In 2011, the Florida Legislature prohibited local government referenda pertaining to development orders. In a simple, straightforward sentence, the Legislature provided: "An initiative or referendum process in regard to any development order is prohibited." § 163.3167(8)(a), Fla. Stat. (2017).

The legislative prohibition in section 163.3167(8)(a) tackles the issue of whether an individual's property rights may be subject to the will of the voters. In resolving this issue in favor of the property owner, the Legislature established consistency with land use law that confers due process rights on property owners through a quasi-judicial process. See Preserve Palm Beach Political Action Comm. v. Town of Palm Beach, 50 So. 3d 1176, 1179 (Fla. 4th DCA 2011). The quasi-

---

[10] Our review of an issue of statutory interpretation is *de novo*. Wright v. City of Miami Gardens, 200 So. 3d 765, 770 (Fla. 2016).

13

judicial process for site-specific development orders has become an unassailable principle of the process of property development in Florida. See Bd. of Cty. Comm'rs of Brevard Cty. v. Snyder, 627 So. 2d 469, 474-75 (Fla. 1993).

Petition 82 conflicts with section 163.3167(8)(a). A municipality may not adopt a law, whether a Charter section or an ordinance, that conflicts with a state statute. See City of Palm Bay v. Wells Fargo Bank, N.A., 114 So. 3d 924, 929 (Fla. 2013) (stating that "municipalities are precluded from taking any action that conflicts with a state statute"). We therefore agree with the trial court's holding regarding the legality of Petition 82.

Our inquiry, however, does not stop here. Plaintiffs assert that, irrespective of Petition 82's legality, the Village had an obligation to forward the signatures to the Supervisor for verification. From this assertion, two issues arise: (i) did the Village have such a ministerial obligation; and (ii) should the trial court at least have ordered the Village to forward to the Supervisor the signatures supporting Petition 81?

C. *Is the Village's duty to forward signatures to the Supervisor merely ministerial?*

Plaintiffs' argue that the Village had a ministerial duty[11] to submit their petitions to the Supervisor for signature verification even though the Village's

---

[11] For a duty to be ministerial, it is imposed expressly by law and involves no discretion in its exercise. See Miami-Dade Cty. Bd. of Cty. Comm'rs v. An Accountable Miami-Dade, 208 So. 3d 724, 731 (Fla. 3d DCA 2016).

attorneys determined that Petition 82 was invalid. Plaintiffs suggest that, if the Village questioned the validity or legality of Petition 82, the Village, *after* forwarding the signatures to the Supervisor, then should have challenged any legal infirmity by filing an action for declaratory relief. Although the Village does not respond to this argument directly in its answer brief, inherent in its response is the idea that an unlawful initiative should not be placed before the voters.

Section 166.031 governs municipal charter amendment elections. It does not set forth with specificity the procedures for moving a charter amendment from petition form to ballot. Nor is there a Florida statute governing the obligations of a county supervisor of elections upon receipt of municipal petitions. Similarly, there is no statutorily prescribed mechanism for challenging the legality of a referendum question. Thus, there is a gap in the statutory law on when and how a municipality should address petitions that appear to its officials as presumptively invalid. The parties suggest that this Court, in this case, determine whether a municipality's duty to move the petitions to the supervisor of elections is ministerial, or whether a municipality may, through its officials, restrain the petition process if the officials have a good faith belief that the petition is unlawful. We respectfully decline the parties' invitation to craft, via judicial fiat, the rules dictating when and how a challenge to an allegedly illegal referendum should be mounted.

A review of Florida case law reveals several different methods employed by various parties to challenge the legality of a referendum question. In some cases, like this one, municipal officials fearing an invalid referendum question would reach voters stopped the referendum process, which compelled referendum proponents to seek a writ of mandamus.[12] In some cases, third parties sought to enjoin an alleged illegal referendum.[13] And, in some cases, the municipality (along with an intervening third party) sought declaratory relief to enjoin an alleged illegal referendum.[14] Irrespective of *how* the issue landed in the courts, in each case, the trial and appellate courts court reached and decided the issue of referendum legality. In none of these cases did a referendum question that had been adjudicated illegal reach the voters.

As this Court stated nearly a half-century ago, our role in the statutorily defined referendum process is limited:

> This referendum, involving as it does, not only an election process of the City of Coral Gables, but also an exercise of legislative power by the electors, should not be impeded or prevented by a court *except where it is made to appear that the proceeding is inapplicable under*

---

[12] See City of Boca Raton v. Siml, 96 So. 3d 1140 (Fla 4th DCA 2012); Gaines v. City of Orlando, 450 So. 2d 1174 (Fla. 5th DCA 1984).

[13] See City of Miami Beach v. Herman, 346 So. 2d 122 (Fla. 3d DCA 1977); City of Coral Gables v. Carmichael, 256 So. 2d 404 (Fla 3d DCA 1972).

[14] See Archstone Palmetto Park, LLC v. Kennedy, 132 So. 3d 347 (Fla. 4th DCA 2014); Preserve Palm Beach Political Action Comm., 50 So. 3d at 1176.

> *the law or is in violation of the law . . . No such showing of illegality of the referendum proceeding having been made in the trial court,* the . . . injunctions restraining the progress of the referendum were improvidently entered.

City of Coral Gables, 256 So. 2d at 411 (emphasis added) (citation omitted).

We leave it to the Legislature and, where authorized, municipal governing bodies to codify any preferred mechanism for challenging a purported invalidity of a referendum question. Therefore, we limit our adjudication in this case to whether the trial court erred in determining Petition 82's legality. It did not. We do not reach the issues of when and how such legality determinations should be presented to the courts.

### D. *Should the trial court, sua sponte, have severed Petitions 81 and 82?*

Finally, in both their initial brief and reply brief, Plaintiffs suggest to this Court that, even if Petition 82 were illegal, the trial court should have ordered the Village to forward to the Supervisor Petition 81 and its supporting signatures. Indeed, as alluded to earlier, Defendants, in their written response to Plaintiffs' Motion, seemingly invited Plaintiffs to separate the two petitions, conceding that no inherent illegality existed with regard to Petition 81.[15]

---

[15] Defendants stated: "To date Plaintiffs have insisted that the two Petitions be treated and considered together. To the extent that Plaintiffs are now willing to separate the Petitions and treat them individually, Defendants agree that the

17

Yet, Plaintiffs do not cite to any portion of the record below where Plaintiffs requested the trial court to enjoin or order the Village to forward only the signatures associated with Petition 81 to the Supervisor for verification. The relevant injunctive relief sought in Plaintiffs' complaint is: "Requiring the CLERK, to submit *the petitions* to the Elections Department for verification of the signatures of the voters that signed them." (Emphasis added). Similarly, the injunctive relief sought in the Motion is for the issuance of an injunction requiring the Village Clerk to "immediately resubmit *the petitions* to the Miami-Dade Supervisor of Elections . . . ." (Emphasis added). Even after Defendants acknowledged that no illegality existed regarding Petition 81, at no point during the May 3, 2017 hearing, or thereafter, did Plaintiffs request the trial court to sever the two petitions and grant Plaintiffs relief regarding Petition 81 alone.

We hardly can conclude then that the trial court somehow abused its discretion[16] by failing, *sua sponte*, to grant Plaintiffs injunctive relief that they never sought. See Cano v. Cano, 140 So. 3d 651, 652 (Fla. 3d DCA 2014) ("To grant unrequested relief is an abuse of discretion.").

**IV. Conclusion**

---

Section 81 Petition can properly be forwarded to the Miami-Dade Elections Department for its consideration and potential placement on the ballot. If Plaintiffs continue to insist that the Petitions be treated together, then they both fail as a result of the illegality of the Section 82 Petition . . . ."

[16] We review an order denying injunctive relief for abuse of discretion. Allied Universal Corp. v. Given, 223 So. 3d 1040, 1042 (Fla. 3d DCA 2017).

18

We affirm the trial court's non-final order denying Plaintiffs their requested injunctive relief because the trial court correctly held that Petition 82 would constitute an illegal referendum.

Affirmed.