HERBOTH S. RYDER, Associate Judge.
Appellant/defendant Blue Cross and Blue Shield of Greater New York challenges an order granting appellee/plaintiff Public Health Trust of Dade County’s motion to enforce settlement agreement and rendering judgment in the amount of $127,-787.87. We reverse and remand for an evidentiary hearing.
The Public Health Trust of Dade County, d/b/a Jackson Memorial Hospital (PHT) sued Blue Cross for $108,460.45 of hospital benefits provided to a Jackson patient during three time periods in 1982 and 1983. Blue Cross denied payment of this sum on the ground that certain services of PHT were for custodial and/or convalescent care, which were excluded under the insurance policy.
The parties eventually entered into a settlement agreement, under which they agreed, inter alia, to provide the patient’s medical records to three nontreating physicians for review, and under paragraph 3(a) of the settlement agreement, those doctors were to determine: “(1) [w]hat amount of the hospital stay, if any, was of a custodial nature in that it was not necessary for the patient to be in an acute care facility?”; and “(ii) [t]he value of the necessary medical noncustodial care.” Paragraph 3(b) of the agreement stated: “BLUE CROSS would then agree to pay JACKSON the sum as set forth above plus interest....”
But for some minor variations, the three doctors essentially agreed on the dates which PHT rendered noncustodial medical *1078 care, which in essence answered question (i). However, in response to question (ii) regarding the value of the necessary, noncustodial services, none of the doctors provided a specific dollar amount. Dr. Lynne’s report did not make any mention of valuation or state he would be unable to provide this answer. Dr. Halpern reported he would be unable to arrive upon a figure without seeing the hospital bill. Dr. Wag-shul stated in his letter that he could not give a dollar value of the necessary medical care but allowed that it would amount to the bills for those days of care which he stated necessary medical care had been rendered.
PHT subsequently billed Blue Cross for $126,282.71, which Blue Cross refused to pay because their audit showed only $12,-190.00 outstanding after exclusions, credits, and undocumented charges. Blue Cross specifically rejected $40,164.00 of miscellaneous charges because there was no line itemization and it allegedly could not determine whether the charges were covered.
Thereafter, PHT filed a motion to enforce settlement agreement in the amount of $82,476.45 plus interest, and requested the court to enter final judgment. Accompanying the motion were affidavits of Dr. Lynne and Dr. Halpern in which each stated, “I have no reason to dispute the value of the necessary medical supplies rendered during periods of custodial care as reflected by the hospital’s itemized bill and medical records.” In opposition to PHT’s motion, Blue Cross submitted an affidavit of Dr. Wagshul which stated:
The medical records which I reviewed did not include an itemized statement of the hospital services for the admissions. However, as stated in the final paragraph of my findings, it was the opinion that the value of the necessary medical noncustodial care would be limited to those charges for services rendered only during the noncustodial portion of the hospital admissions.
The trial court granted PHT’s motion to enforce settlement agreement, specifically ruling that Blue Cross must pay all charges except those which were custodial room and board, and entered judgment in the amount of $82,476.45 plus interest of $45,311.42 for a total of $127,787.87.
On appeal, Blue Cross argues that the trial court erred in enforcing the settlement agreement because there is no evidence that the doctors reviewed the hospital bill itself, and the doctors did not state the value of the necessary medical noncustodial care as required by paragraph 3(a)(ii) of the settlement agreement. We agree.
We have reviewed the record which was before the trial court and the transcript of the hearing on the motion to enforce settlement agreement, but have been unable to discern how the court arrived at the sum stated in the final judgment. The reports and affidavits of the three doctors fail to state any specific sum as the value of the necessary medical noncustodial care, and there was no medical testimony offered as to this amount during the hearing on the motion. Although in affidavit form, two of the doctors stated they had no reason to dispute the value of necessary medical supplies rendered during the periods of custodial care, these were not positive statements based upon personal knowledge, which is required by the settlement agreement. See Bueno v. Hamurabi, N. V., 434 So.2d 364, 365 (Fla. 4th DCA 1983) (trial court erred in not requiring strict adherence to terms of settlement agreement). It seems apparent from the affidavits of the physicians that they did not review the actual medical bills. Furthermore, these statements are directed to the value of medical care given during custodial periods, not the value of medical care given during the noncustodial periods, which is the amount Blue Cross agreed to pay under paragraph 3(a)(ii).
A review of the hearing transcript reveals that the trial court was under the mistaken impression that the value Blue Cross agreed to pay under paragraph 3(a)(ii) of the settlement agreement included the necessary medical care rendered during the custodial period. We do not read paragraph 3(a)(ii) to have that effect. Rather, the unambiguous wording of that *1079 provision, in conjunction with paragraph 3(b), provides that Blue Cross would pay the value of necessary medical services provided during the period of noncustodial care only. This term is sufficiently specific, and must be enforced as written. Don L. Tullis & Associates, Inc. v. Benge, 473 So.2d 1384 (Fla. 1st DCA 1985); Bueno, 434 So.2d at 365.
Therefore, upon remand the trial court should conduct an evidentiary hearing and receive testimony and evidence on the value of necessary medical care rendered during the noncustodial period only. The parties may use the same three doctors or select new doctors. However, the witnesses and evidence must provide the trial court with substantial, competent evidence upon which to base its order.
Reversed and remanded with instructions.