HENDON, J.
Sandra Landman a/k/a Sandra Lapciuc and PaulDan, LLC, appeal from the trial court's order granting Isaac Lapciuc and Del Valle Brands, Inc.'s emergency motion to enforce a settlement agreement. We affirm in part and reverse in part.
Isaac Lapciuc ("Isaac") is the 85% majority shareholder and president of Del Valle Brands ("DVB"), while Sandra Landman ("Sandra") is a 15% minority shareholder of DVB. DVB is a warehouse operation located in the building solely owned by PaulDan LLC, whose sole shareholder is Sandra. DVB leases the warehouse space from PaulDan pursuant to the terms of a Triple-Net Lease. Sandra and Isaac are former spouses whose respective rights to DVB and PaulDan were decided by a June 2013 marital settlement agreement *244 ("MSA")[1] and by the May 2017 settlement agreement ("Settlement Agreement").
The Settlement Agreement arose out of a dispute over Isaac's purchase of Precision Trading ("Precision" or "New Business"). Isaac allegedly pledged certain DVB assets and cross-collateralized those assets with the assets of Precision in connection with financing the acquisition. Sandra objected to the proposed acquisition and filed a shareholder derivative action against Isaac and DVB. The parties entered into the Settlement Agreement. The trial court dismissed the derivative action and all the associated amended complaints, counterclaims, and third-party suits with prejudice, retaining jurisdiction to enforce the incorporated Settlement Agreement.
In 2018, Isaac negotiated increases in DVB's and Precision's portfolios to expand both businesses. With the new demands for product, Isaac applied to increase the businesses' already existing asset-based line of credit ("LOC") by an additional $7 million (from $23 million for DVB and from $10 million for Precision) in order to finance the new inventory demands. The additional LOC was to have the same terms as the original LOC. Sandra objected, asserting that she had the right to approve or object to the new LOC, and claimed that the loan terms were not commercially reasonable pursuant to provision 2(c)iii of the Settlement Agreement, which provides:
iii. No Additional Indebtedness. Except for commercially reasonable and prudent expenditures on behalf of the New Business , Isaac will not incur or guaranty any additional indebtedness exceeding the amounts currently available to be borrowed through pending bank or other loans unless the proceeds of the same are used to reduce the then outstanding balance of Isaac's and DVB's obligation to pay Sandra under her Employment Agreement with DVB.
(Emphasis added). After multiple communications between the parties, Mercantile Bank ("Bank") decided it would not close on the increased LOC until the dispute with Sandra was resolved, either by a court order or by Sandra's agreement to the new LOC. When Sandra refused to give her consent to the increased LOC, and the new business contracts were about to suffer from lack of additional inventory, Isaac filed a motion to enforce the Settlement Agreement.
At the August 28, 2018 hearing on the motion to enforce, the trial court noted that Sandra withdrew her objection to the LOC, while maintaining that she did not "consent" to the LOC nor waive her rights to challenge the LOC in the future. Isaac's counsel stated that the Bank would not close without both a court order approving the LOC pursuant to the Settlement Agreement and a reaffirmation of the Lease's self-executing subordination clause (either by Sandra or the court), because Sandra had indirectly threatened the Bank with legal action should it grant the LOC to Isaac. Sandra's counsel argued against any order from the court "approving" the LOC or the Lease, stating that decision would amount to a declaratory judgment without an evidentiary hearing necessary to prove the legitimacy of the LOC or the Lease. After hearing both parties' arguments, and noting Sandra's withdrawal of her objection to the LOC, the trial court granted in part Isaac's Motion to Enforce *245 the Settlement Agreement. The court found that DVB and Precision were authorized to enter into the LOC. The court also found that the Lease is valid and enforceable, and that the subordination clause is self-executing. Sandra appealed.
The crux of Sandra's objection to the increased LOC - and indeed, the salient issue at the hearing - was whether that additional indebtedness was "commercially reasonable and prudent," as provision 2(c)iii of the Settlement Agreement required. The determination of that question, however, necessitated a full evidentiary hearing. Nevertheless, over Sandra's counsel's strenuous objection, and without any documentary or testimonial evidence that the increased LOC was a "commercially reasonable and prudent" expenditure, the trial court implicitly found that the LOC was commercially appropriate by authorizing Del Valle and Precision to proceed with the LOC. The trial court should not have decided the merits of the motion to enforce the Settlement Agreement without any evidentiary support in the record to evaluate the commercial reasonableness, or not, of the increased LOC. See, e.g., Empire Blue Cross Blue Shield v. Pub. Health Tr. of Dade Cty., 546 So. 2d 1077, 1078 (Fla. 3d DCA 1989) (holding that an evidentiary hearing was necessary on motion to enforce a settlement agreement where the value of certain medical services required under the settlement agreement was undetermined).
The trial court additionally found that the Lease between the parties was valid and enforceable and that the Landlord's subordination clause was self-executing. Once again, the trial court made this ruling without any evidentiary support, and where that issue had not been raised in the motion but was argued for the first time at the motion hearing. To be clear, "the granting of relief, which is not sought by the notice of hearing or which expands the scope of a hearing and decides matters not noticed for hearing, violates due process." Miami-Dade Cty. Bd. of Cty. Comm'rs v. An Accountable Miami-Dade, 208 So. 3d 724, 734 (Fla. 3d DCA 2016) (quoting Celebrity Cruises, Inc. v. Fernandes, 149 So. 3d 744, 750 (Fla. 3d DCA 2014) (quoting Connell v. Capital City Partners, LLC, 932 So. 2d 442, 444 (Fla. 3d DCA 2006) ); see also Mizrahi v. Mizrahi, 867 So. 2d 1211, 1213 (Fla. 3d DCA 2004) ("Due process protections prevent a trial court from deciding matters not noticed for hearing and not the subject of appropriate pleadings."); Epic Metals Corp. v. Samari Lake E. Condo. Ass'n, Inc., 547 So. 2d 198, 199 (Fla. 3d DCA 1989) ("A trial court violates a litigant's due process rights when it expands the scope of a hearing to address and determine matters not noticed for hearing.").
As the increased LOC has since been funded, we affirm that portion of the order allowing that transaction to proceed. We reverse in part and remand with directions to the trial court to strike paragraphs 2 and 3 of the order on appeal, as those rulings were made without the necessary evidentiary hearing.
Affirmed in part, reversed in part and remanded.

Under the 2013 MSA, Isaac agreed to pay Sandra $4 million as full satisfaction of the equitable distribution amount for the buy-out, and after that amount was funded, Sandra was reissued a 15% interest in DVB and received a ten-year employment contract from DVB paying her $200,000 a year. Also, as part of the MSA, Isaac assigned all of his right, title, and interest in PaulDan to Sandra, leaving Sandra as its sole member.